CHARLES A. DE GRAFF and others *vs.* ST. PAUL & PACIFIC
RAILROAD COMPANY and others.

October 16, 1876.

**Constitution—Law Impairing Obligation of Contracts.**—Special Laws 1874, *c.* 105,
entitled "An act to secure the payment of certain debts contracted in the
construction of certain lines of road of the St. Paul & Pacific Railroad
Company," impairs the obligation of the contract between the state of
Minnesota and said company, and is, therefore, invalid.

Appeal by plaintiffs, partners as De Graff & Co., from an
order of the court of common pleas of Ramsey county,
*Simons*, J., presiding, sustaining a demurrer to the com-
plaint.

*Gilman, Clough & Lane*, for appellants.

*I. V. D. Heard*, for respondents.

BERRY, J.[1]  Sp. Laws 1874, *c.* 105, provides (§ 1) that
" no lands now held  *  *  *  by the state to aid in the
construction of the lines of railroad from Watab to Brain-
erd, and from St. Cloud to St. Vincent, or either of said
lines, as now authorized to be constructed by the St. Paul
& Pacific Railroad Company, for those portions of said
railroads now ready for rolling-stock, shall be conveyed,
certified over, or otherwise transferred by the state, or any
of its officers, to the said railroad company, its successors
or assigns, until payment is made of all debts and demands,
due to citizens of Minnesota, heretofore contracted or
incurred in connection with the construction of said lines of
railroad, or any part thereof.  *  *  *

" Section 2.  In case said debts or demands, or any thereof,
are not paid within six months after the passage of this act,
or, if disputed, within sixty days after the amount thereof shall
have been determined, by action or otherwise, then and in
such case the governor is hereby authorized and directed to
sell, or cause to be sold,  *  *  *  the lands, or so much

[1] Gilfillan, C. J., having been of counsel, did not sit in this case.

thereof as may be necessary, now held, or that may be hereafter acquired or held, by the state to aid in the construction of said lines of railroad so ready for the rolling-stock, and apply the proceeds thereof in payment of said debts and demands.''

The present action is brought under the provisions of this act. The complaint alleges that, prior to its passage, '' considerable parts of said lines of road—being about one hundred and forty miles in length in the aggregate—had been constructed and ironed, and gotten ready for putting thereon the rolling-stock, but no part of the same had ever been put into actual operation, with trains of cars running regularly thereon ;'' that the state of Minnesota now holds a large quantity of land granted, by acts of congress, to aid in the construction of these portions of such lines of road constructed, ironed, and ready for the rolling-stock, as aforesaid, amounting to about 700,000 acres ; that, at the time of the passage of the act of 1874, aforesaid, the plaintiffs were, and ever since have been, the owners and holders of a debt and demand incurred before that time in connection with the construction of the said two lines of railroad, including said constructed portion thereof, etc. Other facts are alleged, bringing the case within the provisions of the act mentioned.

This act was passed, and this action is brought, upon the theory that the St. Paul & Pacific Railroad Company had, by the non-fulfilment of its engagements with the state, failed to acquire any right, title, or interest in or to the land mentioned, or that, if it had acquired any such right, title, or interest, it had forfeited the same. The plaintiffs' position is that the company had completed, ready for the rolling-stock, 140 miles of its said branch roads, but had failed to equip the same with the necessary rolling-stock, as well as to operate the same, and has, therefore, failed to acquire any right, title, or interest in or to the lands in question, or has forfeited the same if acquired.

The defendant's position is that, by constructing the road, without equipping it with rolling-stock or operating it, it has become entitled to the lands in question. Which of these positions is correct is wholly a question of statutory construction.

An act of March 11, 1873, (Sp. Laws 1873, c. 107,) provides " that the time for the grading and completion by the St. Paul & Pacific Railroad Company of its branch lines of railroad "—including the lines to which the lands involved in this case appertain—" be, and the same is hereby, extended to and until the first day of January, A. D. 1874, and the said company, so completing the said line within the time in this act limited, shall have and be entitled to the grant of lands in said act of congress made and provided, and to all and singular the same rights, privileges, immunities, lands, and property as if such lines of railroad had been constructed and put into operation, fully equipped for business, within the time heretofore limited by law for the same." This act is, in our opinion, decisive of the case. It provides that, upon " completing " its line, the company shall be entitled to the lands. The word " completing " has substantially the same signification as the word " constructing." A railroad is completed or constructed when that is done which is necessary to make it a railroad—when it is fitted for use as a railroad; that is to say, when it is made ready and put in proper condition for the placing and running of regular trains upon it, or for operation, as it is usually termed. In this, its natural and ordinary sense, the word " completing " does not include the equipment of the road with rolling-stock, or putting it into operation. This natural and ordinary sense is that in which the word " completing " is to be taken to have been used in the act of 1873, in the absence of any reason to the contrary. No such reason appears upon the face of the act itself, while we think that an examination of previous legislation, to which the act of 1873 is supple-

mentary, shows conclusively that a well-marked distinction has been maintained between completing or constructing, on the one hand, and completing or constructing and equipping with rolling-stock, on the other; and that, with regard to that portion of the branch lines (or of corresponding portions) to which the lands involved in the present controversy pertain, construction or completion only has been required.

In making this examination, the first statute to be considered is Sp. Laws 1862, *c.* 20, entitled "An act to facilitate the construction of the Minnesota & Pacific railroad," etc. Section 3 of this act, in general terms, enacts that "the provisions in this act contained are upon condition that the St. Paul & Pacific Railroad Company" shall complete and put into operation, fully equipped for business, the whole of its road and branch, from time to time, as specified in the act; but this section contains no provision as to the consequences of a failure so to complete, etc. Section 5 declares that, "in case the said the St. Paul & Pacific Railroad Company shall fail to construct, put into operation, and fully equip for business that portion of said road extending from St. Paul to St. Anthony, on or before the first day of January next, all the rights, benefits, privileges, lands, property, and franchises conferred upon said company by virtue of this act, or any law of the state or territory of Minnesota heretofore passed, shall thereupon become forfeited to the state absolutely, without any judicial or legal proceedings, or any further act or ceremony whatever; and in case the said company shall fail to construct the other and further portions of said road and branch, as provided by this act, and at or within the time or times herein specified, * * * all the lands, property, privileges, rights, and franchises of the said company, pertaining to the unbuilt portion of said road and branch, shall thereupon become forfeited to the state absolutely," etc.

Section 6 enacts that, "whenever said company shall

actually complete that portion of the road between St. Paul and St. Anthony, so that regular trains of cars are running thereon, and not before, the governor shall certify the same to the secretary of the interior, and thereupon the title to one hundred and twenty sections of land shall vest in said company; and when twenty continuous miles of said road shall be completed, and regular trains running thereon, the title to a further quantity of one hundred and twenty sections shall vest in said company; and whenever said company shall actually complete twenty continuous miles of said road from Minneapolis westward, so as to admit of the running of regular trains of cars on the same, the governor shall certify the same to the secretary of the interior, and thereupon a further quantity of one hundred and twenty sections of said land shall vest in said company; and so on, as often as any further twenty continuous miles of said road shall be completed, so as to admit of the regular running of trains of cars thereon, the governor shall in like manner certify the same to the secretary of the interior, and a further quantity of one hundred and twenty sections of said land shall vest in said company; and it shall be the duty of the governor, whenever said road shall be completed between St. Paul and St. Anthony, in his official capacity, and on behalf of the state, to convey to said company one hundred and twenty sections of land; and whenever any further twenty continuous miles of said road or its branches shall be completed and in operation, the governor shall in like manner convey a further quantity of one hundred and twenty sections of land; and so on, as often as any further twenty continuous miles of said road or its branches shall be completed, shall in like manner convey to said company a further quantity of one hundred and twenty sections of land, until there shall be conveyed to said company all the lands to which they shall be entitled," etc.

We agree with the learned judge below that the general language of section 3, in relation to the condition upon

which the provisions of the act are made dependent, is qualified and controlled by sections 5 and 6. The latter sections contain specific and detailed provisions as to the consequences which are to follow from the failure of the company to perform its engagements, prescribe the times and terms of forfeiture, and the times and terms at and upon which the company shall acquire title to the lands, and the manner in which its title shall be evidenced. All this is done with so much particularity that it must be presumed to express the particular intention of the legislature with regard to the subjects treated of, and, therefore, to control any general language from which a different intention might be inferred.

It is apparent that, in both sections 5 and 6, a distinction is made between different parts of the road and branch. That part from St. Paul to St. Anthony is, by section 5, to be constructed, put into operation, and fully equipped for business, or a total forfeiture follows. As to the rest of the road and branch, a forfeiture ensues only upon failure "to construct." By section 6, the road between St. Paul and St. Anthony is to be completed " so that regular trains of cars are running thereon," in order to vest the title of the first 120 sections of land. The vesting of the title of the second 120 sections is made to depend upon the completion of twenty continuous miles of the road, and the running of regular trains thereon. After this, the vesting of title to lands is made to depend upon the completion of portions of twenty continuous miles each, so as to admit of the running of regular trains of cars thereon. So far as conveyances by the governor are concerned, the first 120 sections are to be conveyed when the road is completed between St. Paul and St. Anthony, and the second 120 sections when any further twenty continuous miles shall be completed and in operation. After this, the governor is to convey as often as any twenty continuous miles of said road

or its branches "shall be completed." While, then, equipment and actual operation of the road are conditions precedent to the vesting of the title of some of the lands, and to a right to a conveyance thereof, as to the lands involved in this case, or corresponding lands—none of which appertain to any portion of the road or branch within fifty miles of St. Anthony—construction and completion, so as to admit of the running of regular trains thereon, is all that is required to make it the duty of the governor to certify to the secretary of the interior, and to vest title in the company, as well as to make it the duty of the governor to convey.

The same distinction, between simply completing and equipping and operating, is recognized in the act of February 6, 1864, entitled "An act to amend the charter of the St. Paul and Pacific Railroad Company," (Sp. Laws 1864, c. 3,) and by section 7 of this act it will be seen that as to the lands involved in this action, or lands corresponding, "completion" only was required.

The act of March 2, 1865, entitled "An act to aid and facilitate the completion of the St. Paul and Pacific railroad and branches," (Sp. Laws 1865, c. 6,) is the next act to be considered. Section 1 extends the time for the grading and completion of the road for two years, etc., "provided, and this act is upon the express condition, that the said company shall complete and equip that portion of the road from Elk River to St. Cloud, with the cars running thereon, on or before the first day of September in the year 1866, and from thence, in a northerly direction, to St. Vincent, on the international boundary line, within the time limited by law." If this section stood alone, there might be some ground for contending that construction, and equipment with cars running thereon, of the line from St. Cloud to St. Vincent, within the five years limited by law, (i. e., by the act of 1864,) were required. In our opinion, however, this section simply requires construction or completion

from St. Cloud to St. Vincent, since, as respects that part of the line, no time is limited by the act of 1864, except time of " completion."

With reference to the second sentence of section 2,[1] it is not important in this case to determine whether it has reference to the lands granted by the act of 1857, as well as to the additional lands granted by subsequent acts, (as the learned judge below is of opinion,) or to the additional lands only. In either event, one of two effects would follow from the somewhat obscure provisions as to the vesting of title, and as to conveyance by the governor. The first possible effect would be to leave these matters just where they would have been left if the sentence mentioned had not been enacted. This, upon the ground that the acts of congress prescribe no time or terms upon which the lands shall vest in the company, nor any provisions upon which they shall be conveyed to the company by the governor, while they do prescribe that the lands shall, under certain restrictions, be subject to the disposal of the territory and state. This is, in substance, to provide that title is to vest, and conveyance to be made, at such time, and upon such terms and provisions, as the territory and state had fixed or might

[1] This section is as follows:

"Section 2. Any and all additional grants of land made prior to the passage of this act, or which may hereafter be made by the congress of the United States, to the state of Minnesota, for the purpose of aiding in the construction of the lines of railroad, or any portion of them, authorized to be constructed by the Saint Paul and Pacific Railroad Company, shall enure to the benefit of said company; and said lands, and the present and future interest of the state in or to them, are hereby granted and assigned unto the said company upon the same terms and conditions as the lands heretofore granted for the same purpose, together with the conditions contained in said act of congress donating the same. And the title of all lands heretofore or hereafter granted by the congress of the United States to the state of Minnesota, for the purposes aforesaid, shall vest in said company at the time, and upon the terms, prescribed by said act or acts of congress making the grant; and it shall be the duty of the governor, on behalf of the state, to convey to said company the lands so granted, according to the terms and provisions contained in the act or acts aforesaid."—[REPORTER.

fix, in the proper and lawful exercise of the right of disposal. This right of disposal was exercised in the acts of 1862, 1864, § 1 of the act of 1865, and the act of March 11, 1873. As to the meaning of these acts, we have already expressed our opinion that construction or completion, without equipment, was all that was required to vest a right to the lands in the company.

The other possible effect of the provisions of section 2, as to the vesting of title, and as to conveyance by the governor, and that attributed to them by the learned judge below, is this, viz. : That, " if the company has performed all that is required by the acts of congress to entitle the state to the lands, as between the state and the United States, then, as between the state and the company, the lands are equitably vested in the latter. The moment the company has earned the lands for the state, that moment it has earned them for itself," and, as held by the learned judge below, under the acts of congress, construction of the road, without equipment or operation, entitles the state to the lands. Which of these two effects would in fact follow from the provision of section 2, it is unnecessary at this time to determine. With either of them the construction and completion of the road, without equipment or operation, vests in the company a right to the lands. This examination cannot, we think, fail to establish the fact before announced, that, in the legislation to which the act of 1873 is supplementary, a well-marked distinction has been maintained between completing or constructing, on the one hand, and completing or constructing and equipping, on the other ; and that, with regard to that portion of the branch lines (or corresponding portions) to which the lands involved in this action appertain, construction or completion only, without equipment with rolling-stock, or operation, has been required. We think this examination tends strongly to confirm the correctness of our interpretation of the act of 1873, viz. : That, by its express terms, the com-

pany is entitled to the lands in question, upon the completion of that portion of its road to which they appertain, without equipping the same with rolling-stock, or putting it in operation. If these views are correct, it follows that the act upon which this action is brought cannot be sustained, because it would impair the obligation of the contract entered into between the state and the St. Paul & Pacific Railroad Company. This action must, of course, fall with the act upon which it is based

Order affirmed.