[S. F. No. 6090. Department One—January 29, 1912.]

B. A. MARDIS, Appellant, v. P. H. McCARTHY, Mayor of the City and County of San Francisco et al., Respondents.

MUNICIPAL CORPORATIONS—SAN FRANCISCO—TUNNELS—AMENDMENTS OF 1911 TO CHARTER AUTHORIZES CONSTRUCTION—SPECIAL ASSESSMENT DISTRICTS.—The amendments of the charter of the city and county of San Francisco, approved by the legislature on February 7, 1911, to wit, the addition to article VI of the charter of a new chapter to be known as Chapter VIII (Stats. 1911, p. 1686), and of the addition to chapter II, article VI, of a section to be known as section 33 (Stats. 1911, p. 1691), authorizes the board of supervisors of that city and county to construct a tunnel in or under an accepted or unaccepted public street, in the manner therein

provided, and to impose the cost thereof upon private property within a determined special assessment district.

ID.—POWER OF SUPERVISORS—ORDINANCE DETERMINING METHOD OF PROCEDURE—DELEGATION OF LEGISLATIVE POWER.—Under said section 33 of chapter II of article VI, the board of supervisors had power, by ordinance, to provide a method of procedure, different from the two alternative methods provided by that section, for the construction of tunnels and for the assessment of the costs and damages thereof upon private property benefited thereby, and to amend the same by subsequent ordinance. The conferring of such authority on the board of supervisors was not an unauthorized delegation of legislative power by the state legislature.

ID.—APPROVAL OF CHARTER BY LEGISLATURE—CONSTITUTIONAL LAW.— If, by the approval, under section 8 of article XI of the constitution, of a charter or an amendment which vests in a local body authority to legislate concerning local matters, the legislature may be said to be delegating legislative power, such delegation is one that is expressly authorized by the constitution; and if the charter may define such procedure directly, it may confer upon the legislative body of the municipality the power to enact a mode of procedure by ordinance, which would have the same sanction and the same effect that it would have had if incorporated in the charter itself.

ID.—ASSESSMENT ON SPECIAL DISTRICT.—Such charter amendments authorize the assessment of the cost of the tunnel improvement upon a special district. The term "assessment" as therein used means the burden imposed upon property for the purpose of paying the cost of the improvement, and laid with reference to the benefit which such property is supposed to receive from the expenditure of the money.

ID.—INTEREST-BEARING CERTIFICATES ISSUED BY AUDITOR — OBLIGATIONS OF MUNICIPALITY—INCIDENTAL EXPENSES.—The provision in such ordinance regulating procedure authorizing the issuance by the auditor, in the absence of sufficient money to pay demands upon the assessment fund, of certificates bearing interest at a rate to be determined by the supervisors, is not an attempt to permit the city to borrow money. The certificates so to be issued are not obligations of the municipality, nor a charge against its funds, but are payable out of the assessments levied against the property within the assessment district. The provision for the payment of interest is in accord with said section 33, permitting the supervisors to provide for the payment of assessments in annual installments, and such interest is also properly chargeable to the property-owner as an item of incidental expenses incurred in providing a sufficient fund for the accomplishment of the work, without exacting in cash from the property-owners the necessary sum.

ID.—POWER TO PAVE OR SIDEWALK TUNNEL.—The power granted by

such provisions of the charter to construct tunnels includes the power to pave or sidewalk them, or otherwise make them fit for use.

ID.—TUNNEL MAY BE CONSTRUCTED ON ACCEPTED STREET.—The specific grant, by chapter VIII of article VI, of the charter of authority to construct tunnels "in, on, or under any accepted street," takes the construction of such tunnels, with their necessary incidents, out of the operation of the general provision of section 23 of chapter II of article VI, that accepted streets must be kept in repair and improved by the city and county.

ID.—CHANGING GRADE OF APPROACHES.—The grant of power to construct the tunnel implies the incidental grant of power to change the grade of that portion of the street to be used as approaches thereto.

ID.—SUPPLEMENTAL ASSESSMENT TO COMPLETE CONSTRUCTION — PROPORTIONAL BENEFITS — AMOUNT PROPERLY CHARGEABLE MAY BE LEVIED IN TWO ASSESSMENTS.—A provision in the ordinance establishing the method of procedure, which authorizes the levy of a supplemental assessment to complete the construction, in the event that the assessment originally levied should turn out to be insufficient, and after an opportunity to all parties interested to be heard in opposition to the levy, and which also declares that the supervisors may, in lieu of levying a supplemental assessment, provide for the payment by the city and county of the amount required to complete the work, does not make the property-owner liable for assessments in excess of the proportional benefits received. He is not harmed by having the amount properly chargeable collected in two assessments rather than one.

ID.—OBJECTION TO SUPPLEMENTAL ASSESSMENT CANNOT BE MADE PRIOR TO LEVY.—Even if the provision for the supplemental assessment is invalid, objection by the property-owner cannot be taken prior to an attempt made to levy it.

ID.—INCIDENTAL EXPENSES—OMISSION TO SPECIFICALLY DEFINE.—A provision in the ordinance for incidental expenses is not invalid because the items constituting such expenses are not specifically defined by the ordinance.

ID.—TWO ASSESSMENT DISTRICTS MAY BE CREATED FOR TUNNEL IMPROVEMENT.—In view of the peculiar nature of a tunnel, which while a single work, serves to unite distinct and separate districts, each of which is benefited, an assessment upon the lands in the two districts is authorized.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Seawell, Judge.

The facts are stated in the opinion of the court.

Hillyer, Stringham & O'Brien, for Appellant.

Percy V. Long, City Attorney, and George Lull, Assistant City Attorney, for Respondents.

SLOSS, J.—The plaintiff appeals from a judgment entered in favor of the defendants upon an order sustaining their demurrer to his complaint. The action was instituted to obtain an injunction restraining the mayor, the supervisors, and other officers of the city and county of San Francisco from proceeding under a certain resolution, adopted by the board of supervisors, declaring the intention of said board to order the construction of a tunnel in or under Stockton Street from the northerly line of Sutter Street to the southerly line of Sacramento Street.

A prior attempt to authorize the construction of such a tunnel and the assesment of the cost thereof upon a special assessment district was before this court in *Gassner* v. *McCarthy*, 160 Cal. 82, [116 Pac. 73], where it was held that the charter of the city and county, as it then read, did not authorize the levy of a special assessment to pay the cost of constructing a tunnel. The proceedings here involved were, however, taken under amendments which have been added to the charter since the institution of the proceedings involved in the Gassner case, and the matters there decided throw · no light upon the questions now before us.

The charter amendments in question were approved by the legislature on February 7, 1911. They consisted in the addition to article VI of said charter of a new chapter to be known as chapter VIII (Stats. 1911, p. 1686), and of the addition to chapter II, article VI, of a section to be known as section 33 (Stats. 1911, p. 1691). Chapter VIII so added to article VI bears the title "Tunnels, Subways and Viaducts" and is divided into four sections. Section 1 reads as follows: "The board of supervisors are hereby empowered to order the construction of any tunnel, subway or viaduct, in, on, under, or over, any accepted or unaccepted open public street, avenue, lane, alley, place or court, within the city and county, or any other land of the city and county, or in, on, under, or over, any land in which and where the city and county may then have an easement or right of way therefor, and to levy the cost and expenses thereof upon private property, in the manner and under and subject to the proceedings, powers,

CLXII Cal.—4

restrictions and limitations in chapter II and chapter VII of this article provided for street work and street improvement."

Section 2 authorizes the board of supervisors to acquire by purchase or condemnation any land, easement, or property necessary and convenient for any purpose mentioned in section 1 and to levy the damages, costs, and expenses thereof upon private property "in the manner and under and subject to the proceedings, powers, restrictions and limitations in chapter III and chapter VII of this article providing for the opening and extending, straightening or closing up in whole or in part of any street, avenue, lane, alley, court or place." (The reference in sections 1 and 2 to chapter VII is meaningless, since article VI contains no such chapter.)

Section 3 reads, "The board of supervisors may, in its discretion, order that not more than one half of the whole of the costs and expenses of any of the work or acquisitions in sections 1 and 2 in this chapter mentioned, or the damages resulting therefrom, be paid out of the treasury of the city and county from such fund as the board of supervisors may designate. Whenever a part of said cost or expense is so ordered to be paid before the making of an assessment therefor, the board of public works, in making up the assessment provided for such cost and expense, shall first deduct from the whole cost and expense such part thereof as has been ordered to be paid out of the municipal treasury and shall assess the remainder of said cost and expense proportionately upon the lots, parts of lots, and lands, in the assessment district or liable to be assessed therefor, and in the manner hereinbefore referred to and provided."

Section 4 relates to the use of tunnels by street-railroads and has no bearing upon the present controversy.

Section 33 of chapter II of article VI, added to the charter at the same time, reads as follows: "The methods of procedure in this article provided for the improvement of streets or for the construction of tunnels, subways or viaducts and appurtenances thereto, and for the assessment of the expense thereof or any portion of such expense upon private property shall not be deemed exclusive, but the board of supervisors by an affirmative vote of not less than two thirds of the members thereof, may by ordinance substitute therefor any method of

procedure in any general law of the state of California now in force and effect, or as the same may be amended, or that may hereafter be enacted, providing for any such improvements in municipalities, and levying assessments for the expense or portion thereof on private property; or the said board may by a like affirmative vote of the members thereof adopt an ordinance which may from time to time be revised or amended, providing a method of procedure for such improvement and assessment; and in such ordinance if said board deems it expedient provision may be made for the payment of any assessment levied in pursuance thereof in annual installments covering a term not to exceed ten years upon conditions as to said board may seem reasonable and just, the rate of interest to be paid on such payments not to exceed seven per cent per annum."

It will be observed that the section last quoted provides three alternative methods of procedure. 1. The method specifically outlined in the charter itself; 2. Any method of procedure, provided by general law, which may be adopted by the vote of two thirds of the members of the board of supervisors; or, 3. Such method, differing both from the provisions of the charter and from the general laws, as may be provided by an ordinance adopted by a like vote of the board of supervisors. The board of supervisors of the city and county of San Francisco proceeded in the third way and in September, 1911, adopted by unanimous vote an ordinance providing a method for the construction of tunnels and for the assessment of the cost and damages thereof upon private property benefited thereby. In November, 1911, the board by like vote adopted an ordinance amending several sections of such ordinance.

The general scheme of the ordinance as amended is similar to that of the Local Improvement Act of 1901 (Stats. 1901, p. 34). It will not be necessary to set forth its various provisions in detail since the appellant does not question that if the board of supervisors has the power to adopt a method of procedure for levying and enforcing special assessments for the construction of tunnels, the method here adopted was a reasonable and proper one and sufficiently safeguarded the rights of the property-owners, except, perhaps, in certain particulars which will be referred to hereafter.

Pursuant to the provisions of this ordinance the board of supervisors adopted a resolution of intention to order the construction in or under Stockton Street of a tunnel which with its approaches should extend from the northerly line of Sutter Street to the southerly line of Sacramento Street, the tunnel itself to extend from the southerly line of Bush Street to a line one hundred and fifty feet southerly from the southerly line of Sacramento Street. The resolution of intention described two districts which were to be connected by the said tunnel and upon which, as comprising the lands specially benefited by such improvement, the damages, costs, and expenses of the construction were to be assessed.

Other facts bearing upon the appeal will be mentioned in connection with the particular points upon which they bear.

1. The appellant contends, first, that the provision of section 33 giving to the board of supervisors authority to provide a method of procedure for the improvement and assessment constitutes an unauthorized delegation of legislative power by the legislature of the state.

It is hardly worth while to discuss the question whether a grant of power contained in a freeholders' charter or an amendment thereto derives its force from legislative action on the part of the state legislature. If, by the approval, under section 8 of article XI of the constitution, of a charter or an amendment which vests in a local body authority to legislate concerning local matters, the legislature may be said to be delegating legislative power, such delegation is one that is expressly authorized by the constitution. (*In re Pfahler,* 150 Cal. 71, [11 L. R. A. (N. S.) 1092, 88 Pac. 270] ; *Platt* v. *City and County of San Francisco,* 158 Cal. 74, [110 Pac. 384] ; *Hellman* v. *Shoulters,* 114 Cal. 136, [44 Pac. 915, 45 Pac. 1057].) That the procedure for constructing tunnels, or making other street improvements, is so far a matter of local concern as to be properly included within the scope of a municipal charter is not questioned by the appellant. (See *Byrne* v. *Drain,* 127 Cal. 663, [60 Pac. 433].) And if the charter may define such procedure directly, we see no reason why it may not confer upon the legislative body of the municipality (in this instance, the board of supervisors) power to enact a mode of procedure by ordinance. The provisions of the ordinance adopted pursuant to the authorization of the

charter have the same sanction and the same effect that they would have had if incorporated in the charter itself. (*Harrison v. Horton,* 5 Cal. App. 415, [90 Pac. 716]; *Murphy* v. *City of San Luis Obispo,* 119 Cal. 624, [39 L. R. A. 444, 51 Pac. 1085].)

2. It is claimed that in some particulars the ordinance establishing the procedure to be followed is an attempted exercise of powers in excess of those granted. Under this head it is claimed, first, that the charter amendments do not authorize the assessment of the cost of the improvement upon a special district. By section 1 of the new chapter VIII of the charter, the board of supervisors is empowered to order the construction of a tunnel and to levy the cost of the expenses thereof upon private property "in the manner and under and subject to the proceedings, powers, restrictions and limitations of chapter II of this article providing for street work and street improvement." By section 5 of chapter II, which is thus incorporated into chapter VIII, the board of supervisors is expressly authorized to define the districts benefited by a proposed improvement and to be assessed to pay the expense thereof. (Stats. 1899, p. 295.) Furthermore, section 33 of chapter II of article VI, which was also, as we have seen, added to the chapter in 1911, contains language clearly indicating an intent to authorize the assessment of the cost of the improvement upon property specially benefited. The section provides for methods of procedure for the construction of tunnels, and "for the assessment of expenses thereof or any portion of such expenses upon private property." The term "assessment" as used in this connection means the kind of assessment here involved, i. e., a burden imposed upon property "for the purpose of paying the cost of the improvement, and laid with reference to the benefit which such property is supposed to receive from the expenditure of the money." (*Taylor* v. *Palmer,* 31 Cal. 241.)

Another objection to the ordinance regulating the procedure is that it contains a provision authorizing the issuance by the auditor, in the absence of sufficient money to pay demands upon the assessment fund, of certificates bearing interest at a rate to be determined by the board of supervisors. It is contended that this is an attempt to permit the city to borrow money and that there is no authorization in law for such bor-

rowing. But it is obvious that the certificates so to be issued are not obligations of the municipality. (*Union Trust Co.* v. *State*, 154 Cal. 716, [24 L. R. A. (N. S.) 1111, 99 Pac. 183].) They are not a charge against the funds of the city and county, but are payable out of the assessments levied against the property within the assessment district.

The provision for payment of interest on the certificates is not open to objection. The necessity for the issuance of such certificates arises from the provision of section 33, above referred to, permitting the board to provide for the payment of assessments in annual installments. The ordinance, in accordance with this authorization, has provided that property-owners desiring an extension of credit may, upon certain terms, obtain the privilege of paying their assessments in installments. No property-owner is liable for interest unless he voluntarily seeks and obtains an extension by requesting that he be permitted to pay in installments. But apart from this consideration, interest upon the certificates is properly chargeable to the property-owner as an item of "incidental expenses incurred in providing a sufficient fund for the accomplishment of the work, without exacting in cash from the property-owners the necessary sum." (*Doyle* v. *Austin*, 47 Cal. 353.)

3. The resolution of intention provides that the tunnel is to be "properly bored, lined, faced, paved with asphaltic pavement, curbed with granite curb, and sidewalked with artificial stone, with all appurtenances necessary to make such tunnel fit for public use." The appellant contends that the power granted by the charter to construct tunnels does not include power to pave or sidewalk. We think this is too narrow a construction of the charter provision. The term "construct" has a broad significance. As applied to a railroad, it has been held to cover the doing of everything necessary to make the road ready for operation. (*DeGraff* v. *St. Paul etc. R. Co.*, 23 Minn. 144; *Preston* v. *Dubuque etc. R. Co.*, 11 Iowa 17.) The grant of power to construct tunnels must, on like reasoning, include the power to do the things necessary to make the tunnels fit for use. The paving of a tunnel and the laying of sidewalks are necessary to enable the public to use the tunnel for the purposes for which it was intended. Such paving and sidewalking are, therefore, a proper incident of the power to

construct. This conclusion in no way conflicts with *Wilcoxon
v. San Luis Obispo,* 101 Cal. 508, [35 Pac. 988], where it was
held that under the statute providing for opening or widening
streets (Stats. 1889, p. 70) the city council had no authority
to provide for grading and gravelling the lands taken for
widening a street. The statute there considered dealt merely
with the subject of acquiring lands for opening, widening, or
straightening streets, leaving the improvement of the streets
when acquired to be covered by other statutes. (See *San
Francisco* v. *Kiernan,* 98 Cal. 614, [33 Pac. 720].) The grad-
ing of the land added to a street was entirely distinct from
the widening, straightening, or extending, which alone were
provided for by the act of 1889. An entirely different situa-
tion is presented where the charter authorizes the "construc-
tion" of tunnels.

In connection with this point it is suggested that, since
Stockton Street is an accepted street, any repair or improve-
ment thereto must, under section 23 of chapter II of article
VI of the charter, be paid for by the city and county. We
doubt whether the construction of a tunnel "in or under" a
street is fairly to be regarded as a repair or improvement of
the street. But, if it be such improvement, the specific grant,
by chapter VIII of article VI, of authority to construct tun-
nels "in, on, or under any accepted or unaccepted street. . . .
and to levy the cost and expenses thereof upon private prop-
erty," certainly takes the construction of such tunnels, with
their necessary incidents, out of the operation of the general
provision that accepted streets must be kept in repair and
improved by the city and county.

4. It is next contended that the construction of the ap-
proaches to the tunnel will involve a change of grade of
Stockton Street to the extent of the length of the approaches,
and that such change has not been authorized by the method
defined in chapter VI, article VI of the charter, providing for
the change of grade of streets. The answer to this point, as to
the point raised with reference to the paving of the tunnel, is
that the change of grade is a mere incident to the construction
of a tunnel. (*Gassner* v. *McCarthy,* 160 Cal. 82, [116 Pac.
73].) The boring of a tunnel necessarily involves the making
of approaches to the mouths of the tunnel. The grant of
power to construct the tunnel is, therefore, a grant of power

to do the incidental thing, and the procedure provided for tunnel construction is all that need be followed.

5. Section 28 of the ordinance, providing the method of procedure, authorizes the levy of a supplemental assessment to complete the construction, in the event that the assessment originally levied should turn out to be insufficient. The section gives to any person interested the right to be heard in opposition to such levy. It also declares that the supervisors may, in lieu of levying a supplemental assessment, provide for the payment by the city and county of the amount required to complete the work.

In *Gill* v. *Oakland,* 124 Cal. 335, [57 Pac. 150], this court treated a similar provision in the Street Opening Act of 1889 as valid. It is now, however, argued that since the amount of the benefit to accrue to the property of a private owner is determined at the time of the original assessment, an excess of cost cannot justify the imposing upon such property of a further assessment, exceeding the benefit as thus ascertained. But it is not true that the first assessment necessarily covers the full amount of the benefit. The provision of the ordinance is that the "benefits estimated shall not exceed the total of such estimated costs, damages and expenses." The assessment is to be "in accordance with the benefits"; that is to say, not equal but proportional to such benefits. The property is assessed for only such proportion of the benefits as may be required to meet the estimated cost. If a further assessment becomes necessary, the hearing afforded to the property-owner gives him ample opportunity to protect his property against the imposition of a burden greater than the total benefit conferred. He is not harmed by having the amount properly chargeable collected in two assessments rather than one.

But in any view, the objection is premature. No supplemental assessment has been levied in the case at bar, and it cannot be known whether any ever will be. It may be that the first assessment will produce funds sufficient to complete the improvement, or, if there should be a deficiency, that the supervisors will supply the needed balance out of the treasury of the city and county. The proper time to question the propriety of a supplemental assessment will be when an attempt is made to levy such assessment.

6. We see no force in the point that the provision in the

ordinance for "incidental expenses" is invalid because the
items constituting such expenses are not specifically defined by
the ordinance. That incidental expenses may properly be
made a charge on the property within an assessment district
is not questioned. (*Doyle* v. *Austin*, 47 Cal. 353; *Burk* v.
*Altschul*, 66 Cal. 533, [6 Pac. 393].) And no reason is sug-
gested for holding that the elements constituting such ex-
penses must be enumerated in the ordinance. A general pro-
vision like the one before us, was upheld in *Brooks* v. *San Luis
Obispo*, 109 Cal. 50, [41 Pac. 791]. If anything not properly
chargeable as an incidental expense is included in the report
upon which the assessment is to be made, the owner is, by
the terms of the ordinance, given a full opportunity to object
and to be heard in support of his objection.

7. In view of the particular nature of a tunnel, which, while
a single work, serves to unite distinct and separate districts,
each of which is benefited, we think there is no force in the
suggestion that an assessment upon the lands in two districts
is unauthorized. The case is very different from *Southwick* v.
*Santa Barbara*, 158 Cal. 14, [109 Pac. 610], where it was
sought, by levying a single assessment upon two districts, to
impose upon the land in one the burden of paying for im-
provements which benefited only the land in the other.

No other contentions are advanced in support of the appeal.
The judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.