(66 South. 164)

No. 20379.

NEW ORLEANS GREAT NORTHERN R. CO. v. STATE BOARD OF APPRAISERS et al.

(May 25, 1914. Rehearing Denied June 29, 1914.)

*(Syllabus by the Court.)*

1. TAXATION (§ 204*) — EXEMPTIONS — RAILROAD PROPERTY.

The constitutional amendment of 1904 (Acts 1904, No. 16) provided that: "There shall be exempt from taxation for a period of ten years from the date of its completion, any railroad or part of railroad that shall have been constructed and completed subsequently to January 1, 1905, and prior to January 1, 1909." *Held,* that under this amendment it sufficed if the railroad bed and track were put in reasonable safe condition for the operation of trains prior to January 1, 1909.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 321–323, 325, 332, 333; Dec. Dig. § 204.*]

2. TAXATION (§ 204*) — EXEMPTIONS — RAILROADS.

*Held,* further, that where a new branch railroad was constructed over a different route, the exemption was earned, although the company thereafter abandoned the operation of several sections of its old line in the same territory by permission of the State Railroad Commission.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 321–323, 325, 332, 333; Dec. Dig. § 204.*]

Appeal from Twenty-Sixth Judicial District Court, Parish of St. Tammany; J. B. Lancaster, Judge.

Action by the New Orleans Great Northern Railroad Company against the State Board of Appraisers and others. Judgment for defendants, and plaintiff appeals. Reversed.

The following is a map of the property in question:

White, all of Covington, of counsel), for appellees.

LAND, J. Plaintiff appealed from the judgment below, denying its claim to exemption from taxation of that part of its railroad between North Slidell and Abita Springs, a distance of 26.5 miles, under the provisions

Farrar, Jonas, Goldsborough & Goldberg, of New Orleans, and Benjamin M. Miller, of Covington, for appellant. R. G. Pleasant, Atty. Gen., and J. Vol Brock, Dist. Atty., of Franklinton (Adrian D. Schwartz and Ellis &

of the constitutional amendment of 1904, reading in part as follows:

"There shall be exempt from taxation for a period of ten years from the date of its completion, any railroad or part of railroad that shall

have been constructed and completed subsequently to January 1, 1905, and prior to January 1, 1909."

Plaintiff contends that said line of railroad commonly called the "Shore Line" was constructed and completed during the years 1907 and 1908; that the State Board of Appraisers, after investigation, decided that said Shore Line, was exempt from taxation for the year 1908, and made the same ruling for the year 1909; but, notwithstanding said rulings, the said board assessed said line of railroad for taxation for the year 1910 without notice to the plaintiff company.

The purpose of the present suit is to erase and cancel the alleged illegal assessment of said Shore Line.

Defendants answered, denying that the Shore Line was completed prior to January 1, 1909, and averring that the Board of Appraisers, acting on information received from plaintiff company, through error, ordered said railroad to be placed on the exempt roll.

Further answering, the defendants averred that with the exception of eight miles of track in a certain ward of the parish, the Shore Line was constructed for plaintiff's own convenience, and was merely substituted in the place of the old East Louisiana Railroad, which was abandoned and discontinued; that said Shore Line is not a *new* railroad in the constitutional sense, as it did not open or tend to develop new territory, but merely traverses the same territory as the East Louisiana Railroad, for which it was substituted, and is very near to and practically parallel with the former line, and connects the same terminals.

The judge below rendered judgment in favor of the defendants.

The crucial question of fact in the case is whether or not the Shore Line was constructed and completed prior to January 1, 1909.

The plaintiff railroad company was incorporated in the year 1905, for the purpose of constructing, acquiring, and operating a main line of railway from Slidell through the parishes of St. Tammany and Washington to the northern boundary of the state of Louisiana, with connecting lines of railway from such points on said main line as the company might select to other points in the state of Louisiana, etc.

In June, 1905, the plaintiff company purchased all the property, rights, and franchises of the East Louisiana Railroad Company, including its main line of railroad from Pearl river to Covington and from Mandeville Junction to Mandeville.

In November, 1908, the plaintiff company petitioned the State Railroad Commission for permission to change the running of its trains between Florenville Junction and Abita Springs to a newly constructed line known as the "Shore Line," by running its trains from Shore Line Junction to Abita Springs. After a hearing of the parties, and an inspection of the Shore Line on December 21, 1908, the Commission granted the plaintiff company permission to operate the Shore Line and to abandon and remove the track between Florenville Junction and Abita Springs and from Mandeville to Mandeville Junction, except as to that portion of the mileage from Florenville Junction to the village of St. Tammany.

Thereupon the plaintiff company removed the old tracks between the points specified in said order, and proceeded to operate the new railroad branch called the "Shore Line."

We annex for reference a map of the locus in quo, which is attached to the brief of the counsel for defendants. This map shows that the Shore Line does not use any part of the old line of the East Louisiana Railroad Company and intersects it at only two points, namely, Mandeville and Abita Springs.

Mr. Pearsall testified that he was the general manager of the plaintiff company, and that the Shore Line between North Slidell and Abita Springs was constructed during the years 1907 and 1908, was ready for op-

eration in December, 1908, and commenced operations under regular schedules in January, 1909. Mr. Pearsall further testified that the track of the Shore Line was inspected by two members of the State Railroad Commission on December 21, 1908, and that the inspection train, consisting of a locomotive and two coaches, ran over the tracks of the Shore Line from Abita Springs to North Slidell.

Mr. Shelby Taylor, of the State Railroad Commission, after testifying that his recollection of the inspection of December 21, 1908, was indistinct, said:

"My impression was that at that time the Shore Line was practically ready for operation. I am satisfied if it had not been, the Railroad Commission would not have granted them permission to abandon the old track and use the new."

Mr. Harman, track foreman, testified in detail as to the construction of the tracks of the Shore Line, and that the work was completed about December 1, 1908. As to the condition of the track, roadbed, approaches, and trestles, the witness stated that "the tracks were all laid and connected, full-tied, full-spiked, and full-bolted," and the dumps were all built, and a majority of it [sic] was surfaced, finished surface, and that when the construction gang left, another gang went to work on the finishing surface and continued such work for a month afterwards. The same witness further testified that the track was "sufficient to carry any rolling stock in this country," and as a matter of fact did carry very heavy construction trains.

Mr. Van Zandt, conductor, testified that he ran a train of four freight cars over the Shore Line on December 24, 1908, and one or more extras previously; and that the track was in good condition.

Mr. Bixley, engineer, corroborated Van Zandt's testimony as to the trip with the four cars, and as to the condition of the track.

Mr. Chandler, another engineer, testified to the running of two special trains over the Shore Line, one on December 20, 1908, and the other on December 21, 1908. He further testified that the track at that time was in first-class condition except in a few places where the hands were putting gravel under the cross-ties.

Dr. McGhee corroborated the testimony of other witnesses as to the trip in a passenger train over the Shore Line, on December 21, 1908.

Mr. Houston, civil engineer, testified that he had charge of the construction of the Shore Line in 1908, and in December of that year the said road was completed so as to be in a condition to operate freight and passenger trains. He further testified that regular schedule passenger and freight trains commenced operating on that railroad on January 17, 1909. Among other details the witness stated that the last rail connection was made the latter part of November, 1908; that on December 20, 1908, the president and other officers of the plaintiff company made an inspection trip by train over the Shore Line; that the gradings and bridges were completed, and the track was entirely laid, ballasted, and surfaced, and the road was in such a shape that trains could be operated. The same witness, however, testified that the construction contract was not completed in all of its parts until after January 1, 1909. The witness mentions a little surfacing, finishing up, and detail work done after that date.

Mr. H. C. Dewey, another civil engineer employed in the construction of the Shore Line, testified that all work had been done upon said railroad necessary to the beginning of the operating of regular passenger trains prior to January 1, 1909, "all necessary grading had been done, and the entire length of road had been dressed and surfaced," and the reason that regular trains were not operated over the Shore Line was because

the State Railroad Commission had not approved tariffs and schedules. The same witness further deposed as follows:

"The engineering department turned the Shore Line over to the maintenance of way department on January 1, 1909. * * * All the large construction gangs were taken off the Shore Line prior to January 1, 1909, with the exception of one gang, which was left to complete the surfacing of the side track at Mandeville. * * * Prior to January 1, 1909, the Shore Line had been divided into regular sections, and section foremen had been appointed to conduct the regular work of maintaining the roadbed and keeping everything in proper shape for the operation of regular trains. * * * I .was assistant division engineer, with entire charge of all construction work upon the Shore Line."

In 1909 the State Board of Appraisers assessed the Shore Line and other tracks of the plaintiff company, but certified to local assessors that the evidence submitted to said board showed that the railroad was exempt from regular state, parish, and municipal taxes, as well as from other kind of ordinary taxation.

The assessor of the parish of St. Tammany, acting under the direction of the police jury, disregarded the action of the State Board of Appraisers, and assessed the plaintiffs' railroad lines for taxation for the year 1909.

Plaintiff sued to annul the assessment, and to enjoin the collection of taxes thereon. The litigation ended in a confession of judgment and consent on the part of the defendants that the assessment was illegal and erroneous, and should be annulled and canceled, because the State Board of Assessors had the exclusive right and authority to assess railroad property.

[1, 2] The evidence recited above is conclusive that the Shore Line was constructed and completed so as to serve the purposes of a railroad prior to January 1, 1909. The testimony of the few defense witnesses to the contrary does not affect the probative result.

In Union Pacific R. R. Co. v. United States, 99 U. S. 402, 25 L. Ed. 274, the court said:

"In one sense a railroad is never completed. There is never, or hardly ever, a time when something more cannot be done, and is not done, to render the most perfect road more complete than it was before."

In De Graff v. St. Paul & Pacific R. R. Co., 23 Minn. 144, the court said:

"A railroad is completed or constructed when that is done which is necessary to make it a railroad; * * * that is to say, when it is made ready and put in proper condition for the placing and running of regular trains upon it, or for operation, as it is usually termed. In this, its natural and ordinary sense, the word 'completing' does not include the equipment of the road with rolling stock, or putting it into operation."

In Manchester & K. R. R. Co. v. City of Keene, 62 N. H. 81, it was held that a railroad was "completed for use" when it was reasonably safe, fit, and convenient for public use and accommodation.

In Southern Kansas & P. R. v. Towner, 41 Kan. 72, 21 Pac. 221, it was held that by the "completion" of a railroad is not meant that the road should be perfect in every respect, but should be so far completed that it might be properly and regularly used for the purpose of transferring freight and passengers.

In Tower v. Detroit, 34 Mich. 328, Judge Cooley says that a reasonably perfect construction is sufficient, "provided the road is in condition to be opened for regular passenger and freight traffic, and is actually in use."

It is sufficient if the road be completed to such place so as to allow trains to be operated thereon and it appears that the company is engaged in the business of placing it in condition for carrying passengers. 33 Cyc. 93.

The constitutional amendment of 1904 exempts, not only railroads, but *parts* of railroads, constructed and completed between January 1, 1905, and January 1, 1909. The inclusion of *parts* of railroads which are not operative units excludes the intent of the lawmaker to require both completion and

operation as prerequisites to exemption. The amendment makes the exemption period of 10 years commence to run from the date of the "completion," and there is nothing in its language to indicate that the term was used in the sense of "operation," which in the nature of things follows on the heels of the completion of railroad tracks.

Defendants argue that the Shore Line was not entitled to the exemption because it was not a new railroad line in the sense of the Constitution, but a mere substitute for the old East Louisiana Railroad, which was abandoned and discontinued, and was built by the plaintiff for its own convenience.

The evidence shows that only two sections of the old road were abandoned, and that the remainder is still in operation. This partial abandonment was not opposed by any person or authority, and was expressly authorized by the State Railroad Commission. That the plaintiff company had the legal right to abandon or surrender its franchise quoad said sections is too clear for dispute. 33 Cyc. 221.

The evidence shows that the Shore Line was a new construction from the beginning to the end, and touched the old line at only two points. The attached map shows that the Shore Line starts on the main line of the plaintiff railroad at North Slidell, about eight miles south of the eastern terminus of the East Louisiana Railroad, and proceeds along the Lake Shore to Mandeville and thence to Abita Springs. The map shows that the route thus pursued is materially different from the route of the old railway. Hence it cannot be said that the Shore Line is a mere duplication of, or substitute for the East Louisiana Railroad.

The case before us is one of abandonment of certain sections of an old railroad, and the construction of a new railroad through a part of the same territory.

The plaintiff's road comes within the con-stitutional exemption, and the court has no authority to make exceptions where the organic law makes none.

It is therefore ordered that the judgment below be annulled, avoided, and reversed, and it is now ordered and decreed that the assessments of the New Orleans Great Northern Railroad Company (Shore Line Branch) for the year 1910, as made by the State Board of Appraisers, and by the assessor of the parish of St. Tammany, are declared to be illegal, null, and void; and it is further ordered that said State Board, and said assessor, and the parish tax collector erase such assessments from the assessment roll of 1910, and cancel all taxes levied thereon; and it is further ordered that all municipal assessments against said railroad in said parish be canceled and erased; and it is further ordered that the tax collector of said parish, and the towns of Mandeville and Abita Springs, be enjoined and restrained from collecting taxes of any kind assessed against said railroad for the year 1910; and it is further ordered and decreed that part of the plaintiff's railroad running from North Slidell to Abita Springs, with its said tracks, depots, buildings, and appurtenances, is exempt from taxes for the period of 10 years, beginning with the year 1908, as originally decided by the State Board of Appraisers; and it is finally ordered that defendants pay costs of both courts.