[No. G016800. Fourth Dist., Div. Three. Mar. 8, 1996.]

COUNTY OF ORANGE et al., Plaintiffs and Respondents, v.
SANTA MARGARITA WATER DISTRICT, Defendant and Appellant.

## COUNSEL

McCormick, Kidman & Behrens and Janet R. Morningstar for Defendant and Appellant.

Lagerlof, Senecal, Bradley & Swift, Andrew D. Turner, N. Gregory Taylor, Karen L. Tachiki, Lauren R. Brainard and Setha E. Schlang as Amici Curiae on behalf of Defendant and Appellant.

Terry C. Andrus, County Counsel, Nicholas S. Chrisos, Deputy County Counsel, Nossaman, Guthner, Knox & Elliott, John C. Murphy, Winfield Wilson and Sue S. Okuda for Plaintiffs and Respondents.

## OPINION

**SILLS, P. J.**—The Santa Margarita Water District (SMWD) buried water and sewerage lines underneath the Santa Margarita Parkway, a county highway, pursuant to an encroachment permit issued by the County of Orange (the County). The permit provided that SMWD would remove and relocate its pipes, at its own expense, if they interfered with the "improvement" of the highway.[1] The Foothill/Eastern Transportation Corridor Agency (FETCA), a joint powers agency which includes the county as a

---

[1]The relevant paragraph states: "The applicant agrees that if any tank, pipe, conduit, duct, tunnel or other installation of any nature or kind placed in the excavation, fill or obstruction for which the permit is issued which shall at any time in the future interfere with the use, repair, improvement, widening or change of grade of the highway, the applicant, or his successors or assigns, within ten (10) days after receipt of a written notice from the Director to do so, will at his own expense either remove such tank, pipe, conduit, duct, tunnel or other installation, or, subject to the approval of the Director, relocate them to a site which may be designated by the Director."

member, is constructing a regional transportation toll road which intersects the highway. At that intersection, FETCA built a grade-separated interchange which allows access to the toll road from the highway. The highway, which was reconstructed as a bridge, remains at its original elevation, while the toll road runs underneath it.

Construction of the interchange required relocation of SMWD's water and sewerage lines. Relying on the encroachment permit, the County notified SMWD it would have to relocate its pipes at its own expense. SMWD refused, and filed this action for declaratory relief, alleging FETCA should bear the relocation costs because it was the governmental entity specifically formed to finance construction and operation of the regional toll road through a combination of tolls, developer fees, and assessment districts, and the residents of SMWD should not be forced to pay a disproportionate portion of the cost of construction merely because that construction requires SMWD's pipes to be relocated.

The trial court, sitting without a jury, held that SMWD must bear the costs of relocation.[2] ▮ First, it found construction of the interchange was a proper governmental use of the highway and thus SMWD was required to pay the costs of relocation under the common law rule that ". . . a public utility accepts franchise rights in public streets subject to an implied obligation to relocate its facilities therein at its own expense when necessary to make way for a proper governmental use of the streets." (*Southern Cal. Gas Co.* v. *City of L. A.* (1958) 50 Cal.2d 713, 716 [329 P.2d 289].) Second, it found the completed interchange will result in significant improvement in traffic levels, lengthen the design life of the highway, provide greater emergency access, and lower the accident rate, and thus SMWD was required to pay the costs of relocation because its facilities interfered with the "improvement" of the highway.

The court's analysis misses the mark. The common law rule referred to in *Southern Cal. Gas* applies in disputes between a privately owned public utility operating under a franchise agreement and a public agency. (*Pacific Gas & Electric Co.* v. *City of San Jose* (1985) 172 Cal.App.3d 598, 601 [218 Cal.Rptr. 400]; see also Pub. Util. Code, § 6297.) It does not apply in disputes, as here, between public agencies. (*City of Los Angeles* v. *Metropolitan Water Dist.* (1981) 115 Cal.App.3d 169, 174 [171 Cal.Rptr. 217]; *Northeast Sacramento etc. Dist.* v. *Northridge Park etc. Dist.* (1966) 247 Cal.App.2d 317, 323 [55 Cal.Rptr. 494].)

[2]By stipulation of the parties, Judge Judith M. Ryan (Ret.) was appointed referee (Code Civ. Proc., § 638, subd. 1), and her decision became the decision of the trial court (Code Civ. Proc., § 644).

In addition, the court's use of such nebulous and speculative findings as improvements in traffic levels, lengthening of the design life of the highway, and lower accident rates, in allocating the costs of relocation is unsupported by the law. Streets and Highways Code section 1463[3] and the permit require SMWD to remove and relocate its facilities at its own expense only if the improvement of the highway necessitates relocation of those facilities. Unfortunately, neither the statute nor the permit defines the word improvement. When a statute does not define its operative words, "courts should give to the words . . . their ordinary, everyday meaning. . . ." (*Halbert's Lumber, Inc.* v. *Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238 [8 Cal.Rptr.2d 298], citations omitted.) Similarly, words in a contract are to be understood in their usual and ordinary sense unless used by the parties in some technical sense. (Civ. Code, § 1644; *Xuereb* v. *Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1344 [5 Cal.Rptr.2d 154].)

When public agencies, planners, civil engineers, land developers, and others experienced in land-use matters speak of street "improvements," they generally mean the *physical* construction or repair of the street. These improvements may include widenings, closures and realignments (see, e.g., *A Local & Regional Monitor* v. *City of Los Angeles* (1993) 16 Cal.App.4th 630, 644 [20 Cal.Rptr.2d 228] [street improvements as environmental mitigation measures]), installation of utilities and drainage facilities (see, e.g., *Liptak* v. *Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762, 770-771 [167 Cal.Rptr. 440]; Gov. Code, § 66419, subd. (a) [the Subdivision Map Act]), installation of landscaping and street lighting (see, e.g., *Knox* v. *City of Orland* (1992) 4 Cal.4th 132, 145 [14 Cal.Rptr.2d 159, 841 P.2d 144]; Sts. & Hy. Code, § 22525 [the Landscaping and Lighting Act of 1972]), and the grading and paving of streets (see, e.g., Sts. & Hy. Code, § 5100 [the Improvement Act of 1911]). They do not include the nonphysical consequences, such as changes in traffic patterns, that occur merely because physical improvements were made in or to another street. And, nothing in the language of the permit suggests the County and SMWD intended a different meaning.[4]

Furthermore, we were not cited to any case, and we are aware of none, which has held that improvements made to one street can also be viewed as

---

[3]Streets and Highways Code section 1463 provides in pertinent part that: "Any permit issued to a public agency or a public utility having lawful authority to occupy the highways shall contain a provision that in the event the future improvement of the highway necessitates the relocation of such encroachment the permittee will relocate the same at his sole expense."

[4]FETCA argues that at the time SMWD installed its facilities in the highway right-of-way "everyone" knew the highway was only an interim solution to the traffic problems in the area and that a regional toll road was planned. The inference is that because SMWD knew the construction of the toll road would likely require it to relocate its facilities sometime in the relatively near future it should bear the costs of relocation. We are unimpressed with this argument. The permit was a form document generated by the County. Moreover, the County

"street improvements" to another street. The closest case our independent research has found in California is *Mardis* v. *McCarthy* (1912) 162 Cal. 94 [121 P. 389]. In *Mardis*, a city adopted a resolution to construct a tunnel for public use and establish a special assessment district to pay the costs of construction. In an action to enjoin construction of the tunnel, one of the many unsuccessful arguments the plaintiff made was that since the tunnel was to run under a street that had been accepted by the city, the city was required to pay for the tunnel as a "repair or improvement" to the street. Although dictum, the reviewing court rejected that argument, saying: "We doubt whether the construction of a tunnel 'in or under' a street is fairly to be regarded as a repair or improvement of the street." (*Id.* at p. 103.) Like *Mardis*, we do not think FETCA's construction of a toll road under the highway constitutes an improvement to the highway.

In disputes between public agencies, the long-standing rule is: facilities that are "prior in time" are "prior in right." (*County of Contra Costa* v. *Central Contra Costa Sanitary Dist.* (1960) 182 Cal.App.2d 176, 178 [5 Cal.Rptr. 783].) Here, FETCA concedes SMWD's facilities were first in place and that it was the toll road project which necessitated relocation of those facilities. Moreover, FETCA's counsel conceded at oral argument that none of the improvements to the highway (e.g., installation of left-turn pockets, street lights, and on- and off-ramps) necessitated the relocation of SMWD's facilities. Because SMWD's facilities are prior in right the court erred in requiring SMWD to remove and relocate its existing facilities in the highway at its own expense.

The judgment is reversed. SMWD shall recover its costs on appeal.

Sonenshine, J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied April 5, 1996, and respondents' petition for review by the Supreme Court was denied June 19, 1996.

---

was represented by able counsel. Had the County, knowing a regional toll road was planned for the area, believed that SMWD should pay the costs of relocation on its construction, even if the toll road did not necessitate relocation of SMWD's facilities, it could have (and obviously should have) made that a condition of the permit.