[Civ. No. 301.   Third Appellate District.—May 20, 1907.]

HEALDSBURG ELECTRIC LIGHT & POWER COM-
PANY, Appellant, v. CITY OF HEALDSBURG, Re-
spondent.

ACTION AGAINST MUNICIPAL CORPORATION—TORTS ULTRA VIRES—IN-
JURIES TO PROPERTY—INSUFFICIENT COMPLAINT.—A complaint in an
action against a municipal corporation, setting forth acts of tort
on the part of the defendant, willfully and wantonly causing injury
to plaintiff's property, and preventing the plaintiff from continu-
ing its lawful business, to the plaintiff's damage alleged, states acts
of tort *ultra vires* to the municipal corporation, for which it cannot
be held responsible, and states no cause of action against it.

APPEAL from a judgment of the Superior Court of
Sonoma County.   A. G. Burnett, Judge.

The facts are stated in the opinion of the court.

Wright & Lukens, for Appellant.

J. A. Barham, for Respondent.

CHIPMAN, P. J.—Action for damages alleged to have been
caused by the oppressive, malicious and violent acts of de-
fendant resulting in the destruction of parts of plaintiff's
plant and with intent to compel it to discontinue business.
A general and special demurrer was sustained, and plaintiff
failing to amend, judgment passed for defendant, from which
plaintiff appeals.

It is alleged in the amended complaint: That plaintiff is a
corporation formed under the laws of this state for the pur-
pose of supplying electric light and power to the residents
of the city of Healdsburg, and that plaintiff ever since March
15, 1899, has been and on that day was lawfully so engaged;
the complaint then describes the property and apparatus con-
stituting plaintiff's plant; avers, in paragraph 7, that the
said plant was not injurious to health or offensive to the senses,
or in anywise interfered with the comfortable enjoyment of
life or with the free use and passage of the public parks and
streets of said city, and in no manner constituted a nuisance,

public or private; that on February 6, 1899, defendant, "well knowing the premises, but solely with the design and intent to oppress this plaintiff, and to compel it to discontinue its business aforesaid, duly passed an ordinance designated 'Ordinance No. 81' in the words and figures as follows"; then follows the ordinance which purports to describe the kind and character of the material to be used in the construction, maintenance and repair of electric lighting plants, or systems now in use in the city of Healdsburg, or to be hereafter erected therein. The amended complaint next charges that with like intent the said city on the same day duly passed ordinance No. 82, which declared certain described electric poles and wires to be a nuisance. It is next alleged that with like intent defendant, on March 10, 1899, served written notice upon plaintiff directing it "within four days from the hour of 7 o'clock of the forenoon of the eleventh day of March, 1899," to abate and remove all its unpainted electric poles now standing, etc., and all wires conducting electricity not properly insulated; defendant was further directed to comply with the provisions of said ordinances Nos. 81 and 82, copies of which were attached to said notice. It is then alleged that on March 14, 1899, all the trustees of defendant met and with like design and intent to oppress plaintiff and compel it to discontinue its business, passed a resolution, which is set forth in full, and which in substance recited the notice given plaintiff of March 10th; that the time in which plaintiff should comply therewith would expire at 7 o'clock A. M. of March 15, 1899; that said plaintiff has not abated or removed said nuisances, etc.; therefore, resolved "that the street commissioner . . . be, and he is hereby instructed, to abate and remove said nuisances, commencing at 7 o'clock A. M., March 15, 1899, and that he employ sufficient assistance to accomplish that purpose." It is then averred that, "Thereupon said defendant, . . . on the 15th day of March, A. D. 1899, wantonly and willfully intending and devising to oppress this plaintiff, and to compel it to discontinue entirely its business at the City of Healdsburg, forcibly and violently cut, uprooted, threw down, broke and so injured divers parts of the plant and property of the plaintiff as to prevent the plaintiff entirely from continuing its business aforesaid at Healdsburg"; that "by reason of said acts" the plaintiff was obliged to wholly discontinue its business to its damage in the sum

of $20,000. There is no allegation in the complaint that plaintiff ever had, or now has, the right to erect poles or wires in said city. The defendant demurred for insufficiency of facts and also specially on the grounds of uncertainty, ambiguity and unintelligibility.

In its brief appellant makes the following statement: "The plaintiff was engaged in a lawful business at Healdsburg, mainly producing and supplying the City of Healdsburg and its residents with electric light and power. The business was not in itself a nuisance and could only become so in the manner of conducting it. But for the purposes of this demurrer the allegations of paragraph VII of the complaint are conclusive upon the defendant, and the only refuge remaining for the defendant is to plead that the acts complained of are *ultra vires* the municipal corporation. This in fact is what counsel for the defendant did in the court below, and it is for the correction of the error in so holding that this appeal is prosecuted." Appellant limits the discussion to the single question: Is a municipal corporation liable for the torts of its agents and servants whose acts are concededly *ultra vires?* We shall confine ourselves to this single question and we shall also assume, as conceded, that the acts complained of were *ultra vires*. We take it when counsel use this phrase it is with knowledge of its import, i. e., that it denotes, in the present case, an act or acts of tort done on behalf of the corporation, not within the scope of the powers conferred upon it. It is charged that defendant wantonly, willfully and with intent to oppress plaintiff and to compel plaintiff to abandon its business "forcibly and violently cut, uprooted, threw down, broke and so injured divers parts of the plant and property of the plaintiff as to prevent the plaintiff entirely from continuing its business aforesaid." It does not appear by direct averment whether this was pursuant to said ordinances and orders set forth; nor does it appear that the alleged injuries were done by the street commissioner pursuant to the order of the defendant; on the contrary, it appears that the defendant itself did the alleged mischief without averring other agency through whom it was accomplished. We are unable to discover any lawful authority for the destruction of plaintiff's property in the manner alleged. That it was *ultra vires* in the strictest sense of that phrase seems clear.

Whatever may be the doctrine in other jurisdictions, it is settled law in this state that a municipality cannot be held liable for injuries to private property thus perpetrated. The principle was applied in *Wichman* v. *City of Placerville,* 147 Cal. 162, [81 Pac. 537], in a matter of contract obligation, where it was held that the *ultra vires* acts of a municipal corporation are absolutely void; and we believe there is no distinction in the application of the principle between such acts arising out of contract and in tort.

In *Sievers* v. *San Francisco,* 115 Cal. 648, [56 Am. St. Rep. 153, 47 Pac. 687], the doctrine of *respondeat superior* was quite fully discussed, where the injury complained of was to private property, resulting from certain street grading. The court there said: "In the performance of its governmental or public functions, the corporation is either deemed a public agency, a mandatary of the state, as in *Barnett* v. *Contra Costa County,* 67 Cal. 77, [7 Pac. 177], and, therefore, not liable to be sued civilly for damages, or it is considered, in the performance of these functions, to be clothed with sovereignty, and therefore not liable in an action. (*Lloyd* v. *Mayor of New York,* 5 N. Y. 369, [55 Am. Dec. 347].) Where the injury results from the wrongful act or omission of an officer charged with a duty prescribed or limited by law, the officer is not treated as the servant or agent of the corporation in the performance of the duties enjoined, but is held to be the servant and agent of, and controlled by, the law, and for his acts the municipality will not be held liable." This case was referred to in *Ukiah* v. *Ukiah Water & Imp. Co.,* 142 Cal. 173, [100 Am. St. Rep. 107, 75 Pac. 773], where it is stated to be the established rule in this state that a municipality is not liable for damages occasioned by the negligence of its officials or employees; citing, also, *Huffman* v. *San Joaquin Co.,* 21 Cal. 426; *Chope* v. *City of Eureka,* 78 Cal. 588, [12 Am. St. Rep. 113, 21 Pac. 364]. In *Chope* v. *City of Eureka,* it was held that in the absence of a statutory provision imposing the liability, a municipal corporation is not liable for personal injuries to individuals occasioned through the neglect of the officers of the corporation to properly perform their duties.

Mr. Dillon says: "If the act complained of lies wholly outside of the general or special powers of the corporation as

5 Cal. App.—36

conferred in its charter or by statute, the corporation can in no event be liable to an action for damages, whether it directly commanded the performance of the act or whether it be done by its officers without its express command." (2 Dillon on Municipal Corporations, sec. 968. See *Winbigler* v. *City of Los Angeles,* 45 Cal. 36; also extended note in *Goddard* v. *Inhabitants of Harpswell,* 84 Me. 499, [30 Am. St. Rep. 373, 376, 24 Atl. 958].)

Plaintiff seems to have been careful to show that the acts complained of were outside of any general or special powers given defendant, and to frame its pleading upon the theory, contended for now, that though *ultra vires,* defendant was liable for its alleged acts. We think plaintiff has misconceived the law as applied in this state.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.