[S. F. No. 5711. In Bank.—June 2, 1911.]

LOUIS GASSNER, Appellant, v. P. H. McCARTHY, Mayor of the City and County of San Francisco et al., Respondents.

MUNICIPAL CORPORATION—LIMITATION ON POWERS OF.—A municipal corporation can exercise only such powers as have been conferred upon it by its charter or by some general law.

ID.—SAN FRANCISCO — CONSTRUCTION OF TUNNEL — ASSESSMENT DISTRICT.—The city and county of San Francisco, although it has power, under section 1 of chapter II of article II of its charter, to construct tunnels, has no power to select any limited area of property within its limits, and impose the cost of the construction of the proposed work upon the owners of such property.

ID.—COST OF TUNNEL HOW TO BE PAID.—In the absence of a grant of power to assess the cost of an authorized work upon a special assessment district, the expense of the work must be borne by the municipality as a whole, either out of current revenues or by means of a bond issue.

ID.—CHANGE OF GRADE—NON-CONTIGUOUS BLOCKS—TUNNEL UNDER INTERVENING BLOCKS—ASSESSMENT FOR COST OF WORK.—Chapter VI of article VI of the charter of that city and county, as amended November 23, 1907 (Stats. Sp. Sess. 1907, p. 41), does not authorize a change of the established grade of two non-contiguous blocks of a specified accepted street, the construction of a tunnel under the intervening blocks, the established grade of which remained unchanged, and the assessment of the cost of the work upon a limited assessment district assumed to be benefited thereby. Such a work is not an exercise of the power to "regrade, repave, sewer, sidewalk, curb or otherwise improve the same so as to conform to such change or modified grade," within the meaning of section 1 of that chapter.

ID.—ASSESSMENT DISTRICT FOR COST OF TUNNEL.—Such chapter does not authorize the creation of an assessment district to bear the cost of constructing the tunnel in or under the portion of the street which remains at its old grade.

ID.—COST OF WORK ON ACCEPTED STREETS.—ASSESSMENT TO PROPERTY-OWNERS.—The street upon which such work was proposed to be done being an accepted street, the city and county, under sections 8 and 23 of chapter II of its charter, could not impose the cost of improving it in any way authorized by that chapter, to private property-owners, either according to frontage, or by the special assessment district plan.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Olin L. Berry, for Appellant.

Percy V. Long, City Attorney, Jesse H. Steinhart, Assistant City Attorney, and Dorn, Dorn & Savage, *Amici Curiæ,* for Respondents.

SLOSS, J.—The purpose of this action is to test the validity of proceedings instituted by the board of supervisors of the city and county of San Francisco, looking to a change of grade on two blocks of Stockton Street in said city and the construction of a tunnel under two other blocks of said street. The steps

taken provide for the assessment of the cost of the proposed work and the damage to be caused thereby upon a district declared to be specially benefited. The plaintiff, an owner of property fronting on Stockton Street, within the proposed dis-- trict, brought this action to enjoin the mayor, the supervisors and other county officers of the city and county from ordering the said proposed work to be done and from taking any further proceedings with reference thereto. A demurrer to the complaint was sustained. The plaintiff declined to amend, and judgment was rendered in favor of the defendants. The plaintiff appeals.

The appellant makes no attack upon the form of the proceedings taken by the board of supervisors or the board of public works. His main contention is that under the charter of the city and county the municipal authorities have no power to assess the cost of the proposed work upon a special assessment district. On the other hand, the respondents do not question the appropriateness of the remedy of injunction, if the city be without power to carry out the contemplated scheme.

Stockton Street is a street running north and south. Proceeding southerly, it crosses successively Sacramento, California, Pine, Bush, and Sutter streets. Between these crossings there are great variations of grade, the street rising sharply until it reaches its highest point between Pine and California streets, and then descending to Sutter Street. The board of supervisors, upon the recommendation of the board of public works, passed a resolution declaring its intention to change the grade of Stockton Street, between Sacramento and California streets and between Bush and Sutter streets. This was to be done by lowering the grade of Stockton Street at the northerly line of California Street forty-four feet and establishing it at 117 feet above the city base. The grade at the crossing of Sacramento Street was to remain at 128 feet above city base. The grade at the southerly line of Bush Street was to be lowered twenty-four feet and established at eighty-six feet above city base, and at the crossing of Sutter Street was to be left at its existing *status* of seventy-eight feet above city base. It was further declared to be the intention of the board that Stockton Street, between Sacramento and California and between Bush and Sutter streets be graded and changed to

the official grade and that the two said blocks be regraded, repaved, resewered, and residewalked. The doing of this work would have produced two open cuts running into the northerly and southerly sides, respectively, of the Stockton Street hill and separated by a distance of two blocks, i. e., the space between Bush and California streets, and it was proposed to connect these two cuts by a tunnel running through the hill under Stockton Street. The resolution in question, accordingly, declared it to be the intention of the board to order Stockton Street to be improved by constructing a tunnel thereunder, to a width equal to that of Stockton Street, between the southerly line of Bush Street and the northerly line of California Street, the grade of such tunnel to conform to the foregoing changed grade of Stockton Street. It was further declared to be the intention of the board to construct two appropriate stairways in Stockton Street between Sutter Street and Bush Street leading from the level of Stockton Street as changed, to Bush Street, and to construct similar stairways in Stockton Street between California and Sacramento streets. The resolution went on to describe a tract of land constituting a district which was declared to be specially benefited by the proposed work and provided that the actual cost of performing the work and the damages caused thereby should be assessed upon the said district.

The plaintiff is the owner of a lot on the easterly line of Stockton Street between Sutter and Bush streets, a lot which would therefore, if the proposed work be done, face upon the open cut leading to the southerly mouth of the tunnel. It is alleged in the complaint that Stockton Street between Sutter and Sacramento streets is an improved and accepted street.

The question in dispute, i. e., the power of the municipal authorities to impose the cost of the proposed work upon an assessment district, involves an examination of the provisions of the San Francisco charter, upon which the respondents rely for authority to carry out the improvement in the manner declared in the resolution of intention. It is elementary that "a municipal corporation can exercise only such powers as have been conferred upon it in its charter, or by some general law." (*Von Schmidt* v. *Widber,* 105 Cal. 151, 157, [38 Pac. 682, 684]; *Hyatt* v. *Williams,* 148 Cal. 585, [84 Pac. 41]; 1 Dillon on Municipal Corporations, 4th ed., secs. 89, 91.) The re-

spondents point, in the first place, to section 1 of chapter II of article II of the charter, which declares that the board of supervisors shall have power, among other things: "26. To construct or permit the construction of tunnels, under such rules and regulations as the board may prescribe." This is the only reference to tunnels to be found in the charter. It clearly constitutes a grant of authority to construct tunnels, but as clearly does not authorize the board to select any limited area of property within the city and county and impose the burden of the construction upon the owners of such property. In the absence of a grant of power to assess the cost of an authorized work upon a special assessment district, the expense of the work must be borne by the municipality as a whole, either out of the current revenues or by means of a bond issue. This is, indeed, conceded by the respondents. They claim, however, that the power to create an assessment district in a case like this is conferred upon the board of supervisors by chapter VI of article VI of the charter. Article VI relates to the department of public works. Chapter II of this article is entitled "Improvement of Streets." Its provisions follow, in the main, those of the general street law, commonly known as the "Vrooman Act." (Stats. 1885, p. 147.) Chapter VI of article VI was not a part of the charter as originally framed. It was added by an amendment approved by the legislature on November 23, 1907. (Stats. (Sp. Sess.) 1907, p. 41.) (Compare section 38 et seq. of Vrooman Act, incorporated by Stats. 1891, p. 116, 1893, p. 89.) By section 1 of this chapter the board of supervisors is "empowered on the written recommendation of the board of public works, to change or modify the grade of any public street, avenue . . . and to regrade, repave, sewer, sidewalk, curb or otherwise improve the same so as to conform to such change or modified grade in the manner as hereinafter provided. Before any change of grade is attempted, the board of supervisors shall pass a resolution of intention to make such change or modification of grade, and it shall in the same resolution, when regrading, repaving, sidewalking, sewering, curbing or other improvement on such street or streets is contemplated in connection therewith, define and establish the district benefited and to be assessed for the payment of damages and for the expense of regrading, repaving, sewering, sidewalking, curb-

ing or otherwise improving such street or streets so as to conform with such change or modified grade; and it shall have power at the same time and in the same resolution to provide for the actual cost of performing the work of regrading, repaving, sewering, sidewalking, curbing or otherwise improving such street or streets or portion or portions thereof with the same or other material with which it was formerly graded, paved, sewered, sidewalked, curbed or otherwise improved, briefly describing the work to be done and providing that the cost of the same shall also be assessed upon the same district which is declared to be benefited by such change or modified grade; and it shall have power at the same time and in the same resolution to provide for the actual cost of performing the work of regrading, repaving, sewering, sidewalking, curbing or otherwise improving such street or streets or portion or portions thereof with the same or other material with which it was formerly graded, paved, sewered, sidewalked, curbed or otherwise improved, briefly describing the work to be done and providing that the cost of the same shall also be assessed upon the same district which is declared to be benefited by such change or modified grade. When a change or modification of grade or grades is proposed to be made upon a street, avenue, alley, lane, court or place, which has already been sewered, paved, curbed or graded, no such change or modification of such grade or grades shall be made unless provision shall also be made for the resewering, repaving, recurbing or regrading of such street, avenue, alley, lane, court or place. One or more streets or blocks of streets may be embraced in the same resolution. . . ."

The respondents claim that, inasmuch as the resolution of intention provides for a change of grade upon two blocks of Stockton Street (i. e., from Sutter to Bush and from California to Sacramento streets), the construction of a tunnel under the two intervening blocks (from Bush to California streets) is an exercise of the power to "regrade, repave, sewer, sidewalk, curb or otherwise improve the same so as to conform to such change or modified grade." We think this contention cannot, under any fair interpretation of the language, be maintained. It must be remembered that the resolution of intention does not assume to change the grade of Stockton Street in the two blocks through which the tunnel is to run.

The change of grade is limited to one block south and one block north of the tunnel. From Bush to California streets the grade of the street is to remain as it has been, that is to say running over the crest of the hill. The claim of the city is, then, that the section is intended to authorize, as an incident to a change of grade in one block, not only the regrading, etc., of that block, but the improvement of any number of other blocks which have theretofore been brought to an established grade which remains unchanged.

The charter authorizes the board to change the grade of any street, and to regrade, repave, etc., the same so as to conform to such change. The idea underlying this provision evidently is that the raising or lowering of the grade of an improved street may and probably will necessitate the destruction and replacement in whole or in part of the pavement, sewer, sidewalk, or other improvements which had been laid and constructed in accordance with the old grade. The regrading, repaving, etc., is therefore authorized as a part of the proceeding for change of grade. But it can hardly have been contemplated that the necessity for such repaving or regrading would arise with respect to those portions of the street which are not to be brought to a new grade. Certainly it would be a straining of the ordinary meaning of words to say that the regrading, repaving or other work upon parts of an improved street, the grade of which remained unchanged, was necessary in order to "conform" to a change of grade at some other place. The section, like other provisions of the street law, looks to the ordering or doing of work upon a part less than the entire length of a street. It declares in terms that "one or more streets or blocks of streets may be embraced in the same resolution." The power to repave, etc., is an incident to the change of grade, and must be limited to the length of the changed grade. When it is proposed to change the grade of two blocks of a street, such two blocks constitute the street so far as the change of grade and any improvement incidental thereto are concerned. A reading of the section as a whole leaves no doubt in our minds of the correctness of the construction here given. Take for example the clause declaring that the board shall provide for the cost of regrading, repaving, etc., "such street or streets or portion or portions thereof with the same or other material with which it was

formerly graded, paved . . . or otherwise improved" and the succeeding one to the effect that when a change of grade is proposed to be made upon a street which has already been improved, no such change of grade shall be made "unless provision shall also be made for resewering, repaving, recurbing or regrading of such street. . . ." This language clearly indicates that the work authorized is the replacement or reconstruction of necessary improvements upon those portions of the street which are to be brought to a new grade, not the original improvement of other portions of the same street.

Under these views, the creation of an assessment district to bear the cost of constructing a tunnel in or under a portion of Stockton Street which remains at its old grade is unauthorized. The proposed improvement is an entire scheme and the grading and paving of the two blocks at either end of the tunnel cannot be separated and upheld. In fact, there can be no doubt that the tunnel is the principal object sought, and the change of grade at the adjoining blocks is an incidental thing, undertaken for the purpose of affording approaches to the tunnel. In the effort to bring the project within the terms of the charter, the resolution of intention seeks to make the change of grade on the blocks leading to the tunnel the principal purpose, and the tunnel itself an incident. This is a forced construction of the real nature of the undertaking, and only serves to emphasize the argument that the framers of chapter VI never contemplated that the burden of what is here sought to be done could be imposed on a special assessment district.

To avoid any misunderstanding it may be remarked that the provision in chapter VI is not the only one authorizing the creation of special assessment districts in connection with street improvements. Under section 5 of chapter II the expense of any street work or improvement may be made chargeable upon a district found to be specially benefited. But the respondents have not relied upon this section, for the sufficient reason that, under sections 8 and 23 of the same chapter, all work on accepted streets must be done at the expense of the city and county. Stockton Street being an accepted street, the cost of improving it in any way authorized by chapter II certainly could not be charged to private property-owners, whether according to frontage, or by the special assessment

district plan. The proceedings are therefore sought to be supported under chapter VI alone, the contention of the defendants in this regard being that work done under this chapter, in connection with a change of grade, is not subject to the rule declared in chapter II, exempting private property from the cost of work on accepted streets. Under the construction we have given to chapter VI, it becomes unnecessary to decide whether this contention is sound. For the same reason, we need not consider appellant's point that, under a proper interpretation of section 1 of chapter VI, the words "otherwise improve" are, under the rule of *ejusdem generis*, to be limited to work of a kind similar to that enumerated in the preceding words, and should therefore be held to exclude the construction of a tunnel. For the purposes of this decision, we have assumed that the wider interpretation urged by respondents is the correct one.

The judgment is reversed.

Shaw, J., Angellotti, J., Melvin, J., Henshaw, J., and Lorigan, J., concurred.