[L. A. No. 3148.   Department Two.—August 23, 1913.]

## JOE FOXEN, Respondent v. CITY OF SANTA BARBARA, Appellant.

Municipal Corporations — Santa Barbara — Waterworks Costing More Than One Hundred Dollars—Contract must be Let to Lowest Bidder.—Section 40 of the charter of the city of Santa Barbara, providing as the exclusive method for the construction of all public works costing more than one hundred dollars, that a contract therefor shall be let to the lowest responsible bidder, is applicable to the construction of municipal waterworks, and neither section 116, nor any other section of the charter, defining the powers and prescribing the duties of the water commissioners, exempts them from the necessity of having the construction of such waterworks done under contract according to the mandate of section 40.

ID.—DISCRETION OF MUNICIPAL OFFICERS.—Where a municipal charter expressly commands that public work costing more than a certain sum shall be let to the lowest responsible bidder, the officers of the city have no discretion to contract for the doing of the work in any other manner.

ID.—POWERS OF MUNICIPAL CORPORATIONS—ULTRA VIRES—CONTRACTS—TORTS.—A municipal corporation may exercise only such powers as have been conferred upon it by charter or by general law, and is not liable for the deeds or omissions of its servants done *ultra vires,* whether they acted with or without the express command of the municipality. This principle is applicable alike to cases arising out of contract and to those sounding in tort.

ID.—CONTRACT TO DIG TUNNELS BY DAY'S LABOR IS VOID—CITY NOT LIABLE TO LABORER FOR PERSONAL INJURIES.—Where the work of digging tunnels to develop a municipal water supply required the expenditure of more than one hundred dollars, the water commissioners of Santa Barbara had no power to do the work by day's labor, and a contract with a laborer to do such work by the day is void. Such person is not, in contemplation of law, in the employ of the city, and may not maintain against it any action for personal injuries sustained by him in the prosecution of the work.

ID.—KNOWLEDGE OF ILLEGALITY OF CONTRACT—CITY NOT ESTOPPED.—The laborer so employed was charged with knowledge that the persons employing him were acting beyond their authority, and the city is not estopped to dispute its liability for such injuries.

APPEAL from a judgment of the Superior Court of Santa Barbara County.   S. E. Crow, Judge.

The facts are stated in the opinion of the court.

W. P. Butcher, City Attorney, for Appellant.

H. C. Booth, and B. F. Thomas, for Respondent.

MELVIN, J.—Plaintiff obtained a judgment for something more than four thousand dollars against the city of Santa Barbara for personal injuries sustained by him from an explosion which occurred in a certain tunnel in which he was working. The said tunnel was being excavated into and through the Santa Ynez range of mountains for the purpose of developing a supply of water for use in the municipal water system of the city of Santa Barbara. The case was

tried by the court, both sides having waived a trial by jury. From the judgment against it the defendant appeals.

The defendant, which is a municipal corporation operating under a freeholders' charter, entered into a contract with Robert Beyrle in March, 1904, by which said Beyrle was to bore certain tunnels in the Santa Ynez Mountains to develop water for use by the inhabitants of the city of Santa Barbara. Subsequently, with the consent of the defendant, the contractor abandoned the work and the water commissioners of the said city thereafter prosecuted the construction of the tunnels, employing a consulting engineer and a supervising engineer for the direction of the work. The supervising engineeer employed foremen who in turn hired shift bosses under whom the men worked in the tunnels. Plaintiff was hired by one of the foremen and went to work in one of the tunnels on October 11, 1909. On October 15th he was severely injured by an explosion of gas in the tunnel.

Appellant's counsel argues that its motion for a nonsuit should have been granted upon the several grounds urged by it, one of them being that the commissioners had no authority, under the charter of the city of Santa Barbara, to do the work in the construction of the tunnel by day's labor, or in any other manner than by letting a contract to the lowest responsible bidder. He submits that as the water commissioners were acting beyond their power, the city may not be held responsible for any injury to the plaintiff, who was their servant and not in its employ. He insists that the construction of the tunnel for the purpose of securing a supply of potable water to be used by the inhabitants of Santa Barbara is a "municipal affair" governed by the provisions of the defendant city's charter, which was adopted under and in pursuance of section 8 of article XI of the constitution of California. By section 40 of the charter it is provided that: "The erection, improvement, and repair of all public buildings and works, . . . when the expenditure therefor exceeds one hundred dollars, shall be by contract let to the lowest responsible bidder." The position of appellant is this: The supplying of water is a "municipal affair"; section 40 grants the power and measures the mode of the exercise of that power in the erection of all public works; and consequently the city may not be bound by the action of its commisioners taken *ultra vires*. The theory of

the learned judge who tried the case may be best stated by quotations from the findings. The court found that the municipal corporation defendant "was engaged in the business of developing and distributing potable water both for municipal uses and for sale to its inhabitants in the same manner that potable water for domestic use is customarily sold and distributed by private corporations engaged in the sale and disposal of water for such uses. . . . That the charter of said city does not impose upon said city the duty of developing water or furnishing the same or selling the same to its inhabitants, but merely gives the city the privilege of so doing, and that said city in its said development, distribution and sale of water to its inhabitants has been and is acting in the exercise of a mere proprietary and private right and not in the exercise of its governmental functions."

Section 115 of the charter of Santa Barbara is in part as follows: "If at any time the city shall become the owner of any water supply, . . . or shall decide to provide or construct such supply. . . . there shall be a department to be known as the waterworks department, . . . and the mayor shall appoint three citizens of the city to be commissioners of such department."

The material portion of section 116 is as follows: "Such commissioners shall, in their respective departments, have full control and management of such water supply, . . . and of the construction, extension, alteration, and repair thereof, and of the collection of revenue therefrom, under such regulations by ordinance as the council may, from time to time, enact."

Section 118 provides: "The commissioners shall appoint all officers and employees of their department. They may remove temporary employees at will, but shall not remove appointees to permanent positions provided by ordinance, except for cause or for the improvement of the public service."

Section 122, so far as it relates to the matter before us, is as follows: "The commissioners shall exercise general supervision over their department. . . . All contracts for work and materials must be made by the commissioners in the manner provided in this charter for making contracts, and must be approved by the council, and all payrolls and accounts before being paid by the council shall first be passed upon by the

commissioners, who shall thereupon certify them to the council for payment.''

It will be seen from an examination of these quoted provisions that section 40 provides an exclusive method for the construction of all public works. While section 116 gives the commissioners full control of the construction of waterworks and of all things pertaining to the supplying of the city and its inhabitants with water, none of the provisions of that or other sections of the charter defining the powers and prescribing the duties of such commissioners exempts them from the necessity of having all public work of importance done under contract according to the mandate of section 40. Plaintiff's counsel contends that *Perry* v. *City of Los Angeles,* 157 Cal. 146, [106 Pac. 410], is an authority supporting their theory that the city may undertake work of the kind here considered without letting a contract. On the contrary, that case furnishes authority for the position taken on this appeal by defendant. That case dealt with the charter of the city of Los Angeles, which nowhere expressly prescribed that a contract must be let for the doing of any of the work of the kind there under discussion. It was accordingly held that the board of works might construct public improvements by day labor. Where, however, a charter expressly commands that public work costing more than a certain sum shall be let to the lowest responsible bidder, the officers of the city have no discretion, and we so held in the Perry case, citing such authorities as *Matthews* v. *Town of Livermore,* 156 Cal. 294, [104 Pac. 303], and *Chicago* v. *Hanreddy,* 211 Ill. 24, [71 N. E. 834]. It is undoubtedly the rule that a municipal corporation is not liable for the deeds or omissions of its servants done *ultra vires.* And this is true whether they acted with or without the express command of the municipality. (*Healdsburg E. L. & P. Co.* v. *City of Healdsburg,* 5 Cal. App. 562, [90 Pac. 955].) A municipal corporation may exercise only such powers as have been conferred upon it by charter or by general law. (See *Gassner* v. *McCarthy,* 160 Cal. 85, [116 Pac. 73], and authorities there cited.) As the charter of Santa Barbara did not confer upon the water commissioners the power to perform the work on the tunnels by days' labor, it follows that any contract which they made with the plaintiff was void. Consequently he was not, in contemplation of law, in the em-

ploy of the city and may not maintain against it any action for personal injuries. If he sued for wages, the city would have a perfect defense. (*Santa Cruz Rock Pavement Co.* v. *Broderick,* 113 Cal. 629, [45 Pac. 863] ; *City Improvement Co.* v. *Broderick,* 125 Cal. 139, [57 Pac. 776] ; *Times Publishing Co.* v. *Weatherby,* 139 Cal. 619, [73 Pac. 465] ; *Shaw* v. *San Francisco,* 13 Cal. App. 548, [110 Pac. 149].)

The principle announced in the cases last cited is applicable alike to cases arising out of contract and to those sounding in tort. This must be so, because the acts of a municipal corporation done *ultra vires* are absolutely void and it follows, as an inevitable deduction, that persons injured because of such acts have no recourse against the municipality. (*Wichmann.* v. *City of Placerville,* 147 Cal. 162, [81 Pac. 537] ; *Healdsburg Electric Light & Power Co.* v. *City of Healdsburg,* 5 Cal. App. 562, [90 Pac. 955].)

Plaintiff was charged with knowledge that the persons who employed him were acting beyond their authority. "It is a general and fundamental principle of law," said Judge Dillon. "that *all* persons contracting with a municipal corporation must *at their peril inquire into the power* of the corporation or of its officers to make the contract; and a contract beyond the scope of the corporate power is void, although it be under the seal of the corporation. This principle is more strictly applied, and properly so, than in the law of private corporations. So, also, those *dealing with the agent of a municipal corporation* are likewise bound to ascertain the nature and extent of his authority." (1 Dillon on Municipal Corporations, 4th ed., sec. 447.)

Counsel for plaintiff attack the defense of *ultra vires* upon the ground that it was not sufficiently pleaded. We find, however, that section 40 of the charter was set up in the answer by way of special defense, and that there was an allegation that the "driving, construction or making of said tunnel" was a public work requiring the expenditure of more than one hundred dollars. As there was no demurrer to the answer, we must hold the pleading sufficient.

Respondent seeks here to apply the doctrine of estoppel, but that doctrine may not be invoked in a case like this, particularly where a municipal corporation is the party defendant. The contracts for labor under which the work was being

performed were void, and validity cannot be given to an illegal agreement through the doctrine of estoppel. *Reed* v. *Johnson*, 27 Wash. 42, [57 L. R. A. 404, 67 Pac. 381].)

Working, as he was, under city employees who were acting *ultra vires*, the plaintiff cannot recover for the injuries received. There is no room for the application of the doctrine of estoppel.

The judgment is reversed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.