# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

### O'DONNELL v. POWELL, City Treasurer, et al.

(Circuit Court of Appeals, Ninth Circuit. June 19, 1922. Rehearing Denied August 7, 1922.)

#### No. 3801.

**1. Statutes ☞123(7)—Act, amending Street Improvement Act held germane to subject of original act.**

Act Cal. May 26, 1917 (St. 1917, p. 970), amending the Street Improvement Act of June 16, 1913, which authorizes cities to establish and change the grade of streets, alleys, and other public ways, and to improve the same to conform to such grade by enlarging its scope to include tunnels, subways, viaducts, bridges, or independent subterranean ways, *held* germane to the subject of the original act and not in violation of article 4, § 24, of the state Constitution, which requires acts to embrace but one subject, which shall be expressed in the title.

**2. Municipal corporations ☞659—City may use street above or below surface of ground.**

When a street in a city is dedicated to the general use of the public, it involves its use, subject to municipal control and limitations, for all uses and purposes of the public as a street, including its occupation above or below the surface.

**3. Statutes ☞109—Title may be amended to embrace new matter.**

A constitutional provision requiring every legislative act to express its subject in its title does not invalidate an amendatory act adding new matter, where it also amends the title of the original act to embrace such matter.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Benjamin F. Bledsoe, Judge.

Suit in equity by Ann S. O'Donnell against Ned T. Powell, Treasurer of the City of Los Angeles, and others. Decree for defendants, and complainant appeals. Affirmed.

The mayor and council of the city of Los Angeles having adopted an ordinance declaring its intention to change and establish the grade of Hill street between certain points, and to establish the grade of the roadway of a tunnel

---

in Second street between certain designated points, and to establish the grade of a stairway tunnel in Flower street, between Second street and a line 50 feet southwesterly therefrom, and to improve the streets mentioned between the limits specified to conform to such modified grade and portions of other streets, and to construct a tunnel in and under Second street between certain designated' points, and a stairway tunnel in and under Flower street between Second street and a line 50 feet southwesterly therefrom to grade specifically stated, and declaring that in its opinion damage to private property would result from such improvements, and specifying the exterior boundaries of the district of land to be benefited thereby and to be specially assessed to pay the costs and expenses thereof and the damages caused thereby, the appellant filed in the court below a bill (subsequently amended) to obtain judgment declaring the ordinance and all proceedings had thereunder void, including the contract which the city had entered into for the construction of the tunnel, and enjoining any further steps or proceedings thereunder. The court having dismissed the bill as amended, holding it insufficient to state a cause of action in behalf of the plaintiff, the present appeal was taken.

Among the allegations of the bill was one showing the plaintiff to be the owner of certain specified lots of land within the specially created assessment district, and one to the effect that the ordinance declared that the tunnel thereby provided for "is to be an independent subterranean avenue for public travel for use of pedestrians and vehicles, and said stairway tunnel to be constructed in Flower street is to be a subterranean avenue for public travel for use of pedestrians," and further declared "that the proceedings for the aforesaid improvements shall be had and taken under an act of the Legislature of the state of California designated and known as the 'Street Improvement Act of 1913,' approved June 16, 1913, and under all acts supplementary thereto or amendatory thereof."

It was also alleged that afterwards, to wit, December 20, 1917, an ordinance was adopted by the city entitled: "An ordinance of the mayor and council of the city of Los Angeles changing and establishing the grade of and ordering certain work to be done on Hill street, from First street to a line 180 feet northeasterly of Third street, and Second street from Broadway to Clay street and from Flower street to Figueroa street, to conform to said changed and established grade, and establishing the grade of the roadway of and ordering the construction of a tunnel in and under Second street a line 17 feet southeasterly from Clay street to Flower street, and a stairway tunnel in and under Flower street between Second street and a line 50 feet southwesterly therefrom, and ordering certain work to be done on portions of other streets, in the city of Los Angeles, and declaring that in their opinion damage to private property will result from said work or improvement; and specifying the exterior boundaries of the district of land to be benefited by said work of improvement, and to be specially assessed to pay the costs and expenses thereof and the damages caused thereby, and determining that bonds shall be issued to represent the cost thereof."

It was then alleged that in and by the ordinances mentioned it was "ordained that the council of the city of Los Angeles deems it to be required by the public interest and convenience and thereby orders that the work and improvement described in the foregoing ordinance of intention be done as in said ordinance of intention described; that the district of land to be benefited by said work or improvement and to be specially assessed to pay the cost and expenses thereof and the damages caused by said work or improvements be as described in said ordinance of intention; that serial bonds shall be issued to represent the assessment of twenty-five (25) dollars or over for the cost and expenses of said work or improvement, as in said ordinance of intention described; that in the opinion of said council damage to private property will result from said work or improvement; and that the proceedings for the aforesaid shall be had and taken under an act of the Legislature of the state of California designated and known as the 'Street Improvement Act of 1913,' approved June 16, 1913, and under all acts amendatory and supplementary thereof."

After setting out the various proceedings had to carry out the purpose of the city and the refusal of the plaintiff to pay any assessment on any of her property situated within the special assessment district, and the subsequent proceedings growing out of such refusal the bill alleged:

"That Second street extends through the city, in a direction nearly east and west, for a distance of about six miles. East of Hill street, it runs through through the principal business portion of the city, affording the customary and most direct route to and from two of its three railroad stations. West of Hill, it runs through residence property. Along the westerly side of Hill arises a ridge, which so separates the business part of the city from the main residence district that communication between the two can now be had only by passing over the ridge, or going around it by circuitous ways. Property of all kinds, business and residence both, have by reason of these facts depreciated in value, and will further depreciate, unless some means of direct communication is provided between these different portions of the city. The construction of this tunnel has been planned for the sole purpose of removing these objections and of providing this means, a direct and approximately level means of communication between a business and industrial district lying to the southwest and embracing an area of over 8 square miles, and an extended and important residential district to the northwest, embracing an area of over 15 square miles, all within the limits or boundaries of said city.

"As projected, the tunnel will run through the ridge and directly under Second street. It will be over 1,500 feet in length. Its floor will lie at a depth of from 40 to 100 feet below the street. It will be inaccessible, save through its eastern and western portals, and will cost $1,121,168.45. Its construction will be of no benefit, but, on the contrary, will be a positive injury to the property fronting on that part of the street lying above it.

"The district assessed to pay for this tunnel consists of a narrow strip of land bounded on the north by a line substantially parallel with and drawn about half a block distant from Second street; on the south by a similar line drawn about 2½ blocks from the same street; and on the east and west by lines substantially parallel with Hill street, and so drawn as to include within the district a body of land, the superficial area of which is not $1/_{500}$th part of the superficial area of the city. Within this district is included the property fronting on that part of Second street which lies above the projected tunnel. As regards the other property included in the district, it will not be specially benefited by the construction of the tunnel beyond the benefits conferred to real property generally throughout the municipality."

Delphin M. Delmas and Herbert Cutler Brown, both of Los Angeles, Cal., for appellant.

Jess E. Stephens, City Atty., Lucius P. Green, Asst. City Atty., and Philip C. Sterry, all of Los Angeles, Cal., for appellees.

Before ROSS, MORROW, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). [1] It is not contended for the appellant that the city was not authorized, in undertaking the proposed work, to avail itself of the provisions of the act of the Legislature approved June 16, 1913 (Stats. 1913, p. 954), commonly known as the Street Improvement Act, as amended by the act of the Legislature of the state approved June 5, 1915 (Stats. 1915, p. 1217), and as further amended in 1917 by the act approved May 26, 1917 (Stats. 1917, p. 970). It is insisted however, by counsel for the appellant, that the last-mentioned act of the Legislature of California, in so far as the present case is concerned, is unconstitutional and void, and also that the nature of the work in question is such that the city

was not authorized to create any local assessment district for the purpose of paying the costs of the work or any damages growing out of it.

In the consideration and determination of those contentions it becomes necessary to set out the title and section 1 of the act of June 16, 1913, and the title and sections 1 and 2 of the act of May 26, 1917. Those of the first are as follows:

"An act to provide for the establishment and change of grade of public streets, lands, alleys, courts, places and rights of way in municipalities, and providing for the improvement thereof, in cases where any damage to private property would result from such improvement, and for the assessment of the costs, damages and expenses thereof upon the property benefited thereby, and to provide a system of local improvement bonds to represent the assessments for the costs, damages and expenses of such improvement, and for the payment and effect of such bonds.

"Section 1. Whenever the public interest or convenience may require, the legislative body of any city is hereby empowered to establish or change or modify the grade of any public street, lane, alley, court, place, or right of way in said city, or any portion thereof, and in any case where in the opinion of said legislative body any damage to private property would result from the improvement thereof, to order the whole, or any part, either in length or width, of such public street, lane, alley, court, place or right of way to be improved to conform to such official grade by grading or regrading, paving or repaving, planking or replanking, macadamizing or remacadamizing, piling or repiling, capping or recapping, graveling or regraveling, oiling or reoiling, sewering or resewering, sidewalking or residewalking, curbing or recurbing, guttering or reguttering, or by the building of storm water ditches or tunnels or breakwaters, levees, walls of rock, or of other materials, to protect the same from overflow or injury, or by the construction of manholes, culverts, bridges, cesspools, tunnels, viaducts, conduits, subways, cross-walks, steps, parking or parkways, and the construction or reconstruction in, over or through property or rights of way owned by such city of retaining walls, tunnels, sewers, ditches, drains, conduits, viaducts, subways, and channels for sanitary and drainage purposes, or either, or both thereof, with necessary outlets, cesspools, manholes, catch basins, flush tanks, septic tanks, connecting sewers, ditches, drains, conduits, channels and other appurtenances and breakwaters, levees, bulkheads and walls of rock, or other material, to protect the streets, lanes, alleys, courts, places, public ways, and other property in any such city from overflow or injury by water, or otherwise, or by the doing of any other work which shall be necessary to improve the whole, or any portion of such streets, lanes, alleys, courts, places, or rights of way of such city."

Stats. 1913, p. 954.

The title and sections 1 and 2 of the act of 1917 are as follows:

"An act to amend the title and sections one, two, three, five and forty-six of an act entitled 'An act to provide for the establishment and change of of grade of public streets, lands, alleys, courts, places and rights of way in municipalities, and providing for the improvement thereof, in cases where any damage to private property would result from such improvement and for the assessment of the costs, damages and expenses thereof upon the property benefited thereby, and to provide a system of local improvement bonds to represent the assessments for the costs, damages and expenses of such improvement and for the payment and effect of such bonds,' approved June 16, 1913.

"Section 1. The title of an act entitled 'An act to provide for the establishment and change of grade of public streets, lands, alleys, courts, places and rights of ways in municipalities, and providing for the improvement thereof, in cases where any damage to private property would result from such improvement and for the assessment of the costs, damages and expenses thereof upon the property benefited thereby, and to provide a system of local

improvement bonds to represent the assessments for the costs, damages and expenses of such improvement, and for the payment and effect of such bonds,' approved June 16, 1913, is hereby amended to read as follows:

" 'An act to provide for the establishment and change of grade of public streets, lanes, alleys, courts, places and rights of way, and of any of the following avenues of public travel, namely, tunnels, subways, viaducts, bridges or independent subterranean ways in municipalities and providing for the construction or improvement thereof, in cases where any damage to private property would result from such improvement, and for the assessment of the costs, damages and expenses thereof upon the property benefited thereby, and to provide a system of local improvement bonds to represent the assessments for the costs, damages and expenses of such improvement, and for the payment and effect of such bonds.'

"Sec. 2. Section one of said act is hereby amended to read as follows:

" 'Section 1. Whenever the public interest or convenience may require, the legislative body of any city is hereby empowered to establish or change or modify the grade of any public street, avenue, lane, alley, court, place or right of way in said city, or any portion thereof, and also the grade of the roadway of any of the following avenues of public travel, namely, tunnels, subways, viaducts, bridges or independent subterranean ways, in, on, under, over or through any public street, avenue, lane, alley, court, place or other land of the city, or in, on, under, over or through any land in which and where the city may then have an easement or right of way therefor; and in any case when or where, in the opinion of said legislative body, any damage to private property would result from the improvement thereof, to order the whole or any part, either in length or width, of such public street, avenue, lane, alley, court, place or right of way or other land of the city, in which and where the city then have an easement or right of way therefor, to be improved to conform to such official grade by grading or regrading, paving or repaving, planking or replanking, macadamizing or remacadamizing, piling or repiling, capping or recapping, graveling or regraveling, oiling or reoiling, sewering or resewering, sidewalking or residewalking, curbing or recurbing, guttering or reguttering, or by the construction, reconstruction or repair of manholes, culverts, cesspools, conduits, cross-walks, steps, parking or parkways, or by the construction, reconstruction or repair of poles, posts, wires, conduits, lamps and other appurtenances for the lighting thereof; and also in any case where, in the opinion of said legislative body, any damage to private property would result from the construction, reconstruction or repair thereof, to order the construction, reconstruction or repair of any of the following avenues of public travel, namely, tunnels, subways, viaducts, bridges, or independent subterranean ways, together with approaches thereto, and all appurtenances therefor, in, on, under, over or through any public street, avenue, lane, alley, court, place or other land of the city, or in, on, under, over or through any land in which and where the city has an easement or right of way therefor, to the grade established for the roadway of such tunnel, subway, viaduct, bridge, or independent subterranean way, and order the construction, reconstruction or repair of stormwater ditches or tunnels, or breakwaters, levees or walls of rock, or other materials, culverts, manholes, cesspools, conduits, subways, retaining walls, sewers, ditches, drains and channels for sanitary and drainage purposes, or either or both thereof, with necessary outlets, catch-basins, flush tanks, septic tanks, connecting sewers and other appurtenances, to protect the streets, avenues, lanes, alleys, courts, places, or rights of way, or any of the following avenues of public travel, namely, tunnels, subways, viaducts, bridges or independent subterranean ways which may be constructed as hereinabove provided, from overflow or injury by water or otherwise; and to order the doing of any other work which shall be necessary to improve the whole, or any portion of such street, avenue, lane, alley, court, place or other land of the city, or any of the following avenues of public travel, namely, tunnels, subways, viaducts, bridges or independent subterranean ways which may have been constructed, or which shall be constructed, under the proceedings provided in this act. This act shall apply equally in cases where the official grade of any public street, avenue, lane, alley, court, place or right of way, or of the roadway of any of the

following avenues of public travel, namely, tunnels, subways, viaducts, bridges or independent subterranean ways, in, on, under, over or through any public street, avenue, lane, alley, court, place or other land of the city, or in, on, under, over or through any land in which and where the city may then have an easement or right of way therefor has previously been established or changed, and where such grade is established, modified or changed in whole or in part by the same proceedings by which the improvement is ordered, if in the opinion of the legislative body of the city, damage will result to private property from the making of the improvement contemplated by the proceedings.' "

Stats. 1917, p. 970.

The constitutional provision relied upon by the counsel for the appellant is section 24 of article 4 of the Constitution of California, which provides that every act shall "embrace but one subject, which subject shall be expressed in its title," and the argument in support of the contention is that the amendment of 1917 is not germane to the subject mentioned in the title or in section 1 of the act of 1913.

Regarding the constitutional provision referred to, it was held by the Supreme Court of California in the Matter of Mabel Maginnis, 162 Cal. 200, 121 Pac. 723, that the provision should receive a reasonable and not a narrow construction; its purpose being to guard against the inclusion in a single or general act of various disconnected provisions. In a preceding decision of the same court in the case of Ex parte Liddell, 93 Cal. 633, 636, 29 Pac. 251, 252, the court said:

"The object of the provision is to prevent legislative abuse,—to prevent the passage of acts bearing deceitful and misleading titles. It is intended to protect the members of the Legislature, as well as the public, against fraud; to guard against the passage of bills the titles of which give no intimation to the members of the Legislature or to the people of the matters contained therein. Cooley's Constitutional Limitations (6th Ed.) 169."

Counsel for appellant thus states his construction of the title and the body of the original act of 1913:

"As enumerated both in the title and in the body of the act, the subject-matter which the legislator purposed to deal with was urban avenues of public travel, and the object which he aimed at was to furnish means for improving them. These means he declared were to be the establishing of such avenues of a suitable grade, and then the doing, *upon this grade* [italics ours], of 'any work which [should] be necessary to improve them.' The whole purpose of the act was, in a word, to make such avenues better than they were before."

We think the construction thus put by appellant's counsel upon the act of 1913 is altogether too narrow, both as respects its title and the body of it. As will have been seen, the title of the act provides for, among other things, the grade and improvement of public streets, lands, alleys, courts, places, and rights of way in municipalities in cases where any damage to private property would result therefrom, and for the assessment of the costs, damages, and expenses thereof upon the property benefited, and for a system of local improvement bonds for the payment of such costs, etc. And by section 1 of the act, and by the provisions of the charter of the city, the city council became empowered, whenever the public interest or convenience requires, to establish, change, or modify the grade of any street, etc., or any portion thereof, or to order the whole or any part, either in length or width,

of any street to be improved to conform to such official grade by any of the various means specified, or otherwise, *or by the doing of any other work which should be necessary to improve the whole or any portion of such streets, lanes, alleys, courts, places, or rights of way of such city.*

[2] We think it very clear that the subject-matter of both the title and of section 1 of the act of 1913 is the same, and that the subject of neither can be properly limited to the grading or regrading of the mere surface of the streets, lanes, etc., but that both embraced the grading, regrading, etc., of the streets, and also any other work thereon that the legislative body of the city deems necessary to improve the whole or any portion of the streets, lanes, alleys, courts, places or rights of way of the city. The rights of the public in a public street of a city, even against the abutting owners, are by no means limited to the mere surface of the street. In considering the city ordinances and the legislative acts of California here in question, the Supreme Court of the state, in the recent case of Hayes v. Handley, 182 Cal. 273, 282, 187 Pac. 952, 955, adopting its language in the previous case of Colegrove Water Co. v. City of Hollywood, 151 Cal. 425, 90 Pac. 1053, 13 L. R. A. (N. S.) 904, said:

" 'In cities it is customary to devote not only the surface of the street and the space above the street to public use; but the municipality may, and frequently does, occupy the soil beneath the surface for the accommodation of sewers, gas and water pipes, electric wires, and conduits for railroads. Where the city undertakes to occupy the space above or below the surface of the street for any purpose within the scope of the public uses to which highways may be put, the use of the owner of the fee must yield to the public use.' It is well settled that the manner and extent of such public use is not limited by any standard of methods of use in vogue at the time of dedication. 'On the contrary,' said this court, in Montgomery v. Santa Ana. etc., Co., 104 Cal. 186, 191 (43 Am. St. Rep. 89, 25 L. R. A. 654, 37 Pac. 786, 785), 'we affirm that when a public street in a city is dedicated to the general use of the public, it involves its use subject to municipal control and limitations for all the uses and purposes of the public as a street, including such methods for the transportation of passengers and freight as modern science and improvements may have rendered necessary, and that the application of these methods, and, indeed, of those yet to be discovered, must have been contemplated when the street was opened and the right of way obtained, whether by dedication, purchase, or condemnation proceedings, and, hence, that such a user imposes no new burden or servitude upon the owner of the abutting land.' While the precise question, namely, as to whether or not a tunnel for traffic is a reasonable street use, has never been determined in this state, it has, apparently, been assumed without question in a number of recent cases that if the city has legislative authority to construct a traffic tunnel, the rights of abutting property owners would not stand in the way of its construction on the theory that an easement is being asserted not contemplated by the original dedication. Gassner v. McCarthy, 160 Cal. 82, 116 Pac. 73; Mardis v. McCarthy, 162 Cal. 94, 121 Pac. 389; Thompson v. Hance, 174 Cal. 572, 163 Pac. 1021. Authorities from other jurisdictions, moreover, confirm the conclusion that traffic tunnels must be recognized as a necessary part of a modern system of highways. We find the Supreme Judicial Court of Massachussetts stating its opinion as follows in a well-considered and carefully reasoned case: 'Our system, which leaves to the landowner the use of the street above or below or on the surface, so far as he can use it without interference with the rights of the public, is just and right; but the public rights in these lands are plainly paramount, and they include, as they ought to include, the power to appropriate the street above or below the surface, as well as upon it, in any way that is not unreasonable, in reference either to the acts of all who

have occasion to travel or to the effect upon the property abutters. The increase of requirements for the public within the streets of our large cities has probably equaled, if it has not surpassed, the increase of requirements for business along the streets. The Legislature, the guardian of public interest and of private rights, has determined that the space below the surface of certain streets in Boston is needed for travel. The question is whether action under the statutes involves an acquisition of a new right as against the landowner, or only an appropriation and regulation of existing rights. It hardly can be contended that this is an unreasonable mode of using the streets in reference either to travelers or abutters. If it is not an unreasonable mode of using them, the mere fact that it deprives abutters of the use of vaults and other similar underground structures in the streets, which they have heretofore maintained, is of little consequence. Abutters are bound to withdraw from occupation of streets above or below the surface whenever the public needs the occupied space for travel. The necessary requirements of the public for travel were all paid for when the land was taken, whatever they may be, and whether the particulars of them were foreseen or not. The only limitation upon them is that they shall be of a kind which is not unreasonable. In the present case the travel which is being provided for is from place to place within the city. There are stopping places on the subway at convenient points. In that respect it is different from a tunnel designed only or chiefly for travel for long distances. The new method is a substitution in part of a subterranean use of the streets for the use of their surfaces for the same general purposes. It is impracticable to have direct communication between the premises of abutters and the cars in the tunnel, but by going a short distance access to them may be had from any place. We are of the opinion that this use of the streets is within the purposes for which the lands were taken, and that no additional servitude is created by it.' Sears v. Crocker et al., 184 Mass. 586, 100 Am. St. Rep. 577, 69 N. E. 327. We concur in this conclusion, and decide that the construction of the proposed tunnel will be within the right of the city as acquired under the dedication of the ground for street purposes."

[3] Appellant's counsel readily concedes that if the act of 1917 is valid it fully authorized the work directed by the city. In support of his contention that it is void he argues that, where the title of an act declares it to be an amendment of a specified section or sections of a preceding act, that is in effect a declaration that no new matter is proposed by way of amendment that is not germane to the specified section or sections and therefore a restriction upon the subject-matter of the amending act.

We think a complete answer to the argument is the fact that the act of 1917 was not an amendment of specified sections of the act of 1913 only, but was also an amendment of the title of that act, by which the title of the latter was expressly made to include "any of the following avenues of public travel, namely, tunnels, subways, viaducts, bridges, or independent subterranean ways in municipalities, and providing for the construction or improvement thereof."

Apart from that consideration, we are quite unable to agree that the construction of a tunnel in and under the surface of a city street is not germane to the general subject of the improvement of such street in connection with other streets of the city, or with any other work thereon expressly authorized by the act of 1913.

Respecting the claim of the appellant that the improvement in question is of such a nature as not to admit of a local assessment for the payment of costs or damages arising out of it, we are of the opinion

that the decision of the Supreme Court of the state in the case of Hayes v. Handley, supra, is conclusive.

The judgment is affirmed.