Filed 2/27/26  Salley v. Outfront Media CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ROBERT SHANE SALLEY, | B346096 |
| Plaintiff and Appellant. | Los Angeles County Super. Ct. No. 23STCV21141 |
| v. | |
| OUTFRONT MEDIA, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel M. Crowley, Judge.  Affirmed.

Lazarski Law Practice, Bryan J. Lazarski, Stonebrook Law, and Joseph Tojarieh for Appellant.

Constangy, Brooks, Smith & Prophete, Lara C. de Leon, and Kelsey O'Brien for Respondent.

Robert Shane Salley sued his former employer, Outfront Media, LLC (Outfront), for 10 causes of action arising from his employment and termination. Outfront successfully moved for summary judgment. Salley appeals the judgment as to five of his 10 causes of action: his claims for failure to pay earned commissions, failure to provide meal and rest periods, waiting time penalties, and unfair competition. He argues the trial court erred because there are triable issues of material fact on whether he was entitled to commissions under the parties' contract and whether he was an outside salesperson exempt from statutory meal and rest periods. We reject both arguments and affirm the judgment.

## BACKGROUND

### I. Salley's Work for Outfront

Outfront is an advertising company that specializes in billboards and transit displays. Salley worked for Outfront (and its predecessors) from 1993 to July 2022. By the end of Salley's tenure, he was a Senior Account Executive.

Salley's job was to sell Outfront's advertising space. His duties included finding new clients, servicing accounts to retain clients and ensure they paid their invoices, taking clients to view Outfront's billboards, developing client proposals, setting prices, identifying locations for ads, and helping to design ads. Salley also ensured Outfront posted the ads and confirmed that with clients.

Outfront classified Salley as an exempt outside salesperson. It paid him solely via commissions and bonuses. Outfront expected Salley to spend most of his time working outside its Los Angeles office. At his deposition, Salley testified

2

that he spent about 40 to 50 percent of his time working in the field "[s]eeing clients," "[s]coping out potential locations," and monitoring what competitors were doing. He also spent time working remotely on his laptop at home or in his car. At times, he went to Outfront's office to attend meetings and perform other work.

Salley's supervisors did not oversee his work schedule. He never clocked in or out and did not log his hours worked.

In about February 2020, Outfront transferred Salley from its national sales team to the Los Angeles local sales team. Outfront also reassigned some of his accounts. In his new position, Salley was again expected to spend the majority of his time in the field and was only occasionally required to be physically present in the office, at most once a week. Salley believed his supervisors began to "micromanage[ ]" him in his new position. They required him to log his sales and calls and to contact 20 prospective clients each week.

In March 2020, Outfront directed all employees in California to work from home pursuant to Governor Newsom's stay-at-home order during the COVID-19 pandemic. While the stay-at-home order was in effect, Salley did not visit clients in person except for sometimes meeting them for lunch. He continued to drive around to scope out inventory and find new clients. He only went to Outfront's office about once per month.

In June 2021, Outfront re-opened its Los Angeles Office. His supervisor at the time, Billy Corvalan, expected Salley to work most of his time in the field and to be physically present in the office at most once a week.

## II. Salley's Performance Problems and Termination

Beginning in 2019, Salley suffered from mental health problems including alcohol abuse. He sometimes drank during work hours. Outfront's vice president of human resources, Djuna Duronslet, believed he was intoxicated at a conference in September 2019. Shortly afterward, Salley took a leave of absence for in-patient treatment. He attended in-patient treatment a second time in November 2019.

In July 2020, Outfront had renewed concerns about Salley's performance. According to his supervisor, he was not responding to coworkers. Salley had relapsed and was again struggling with alcohol abuse. For the third time, he underwent in-patient treatment.

Similar problems occurred in October 2021. Salley's supervisor believed he was not responding to coworkers and clients. Salley asked for permission to temporarily work from his parents' home in Arizona. Outfront agreed.

In February 2022, Outfront issued Salley a final written warning asserting performance issues. Outfront also reassigned Salley's largest account. On July 11, 2022, an unidentified employee told a supervisor that Salley was intoxicated during a sales meeting. Outfront terminated Salley on July 15, 2022.

## III. Salley's Commissions

During the relevant period, Outfront paid Salley pursuant to its 2021 Local Sales Commission Plan. Shortly after his termination, Salley asked his former supervisor, Billy Corvalan, about pending commission payments. As we shall explain below, Corvalan informed him that an "[e]arnings balance of $85,894 on uncollected sales" was "still owed to [Salley] once clients pay their

invoices," but less than a month later Outfront took the opposite position.

## IV. Salley's Lawsuit and Appeal

Salley filed suit against Outfront in 2023. He also named Christopher O'Donnell and Billy Corvalan, two of his supervisors, as individual defendants. Salley alleged 10 causes of action including failure to pay commissions, failure to provide meal and rest periods, waiting time penalties, claims pertaining to disability discrimination, intentional infliction of emotional distress, wrongful termination, and unfair competition.

Outfront (and the two individual defendants) moved for summary judgment. In the alternative, they moved for summary adjudication of each cause of action and of Salley's claim for punitive damages.

The five causes of action at issue on appeal arise from two categories of alleged unlawful employment practices. Outfront allegedly violated Salley's statutory rights by (1) failing to provide him with meal and rest periods and (2) failing to pay all commissions owed under his contract.

On the causes of action for meal and rest period violations, Outfront argued Salley was an exempt outside salesperson. In opposition, Salley argued there were triable issues on whether the outside sales exemption applied while he worked from home beginning in March 2020.

On Salley's cause of action for unpaid commissions, Outfront argued it paid all commissions he was entitled to under the 2021 Local Sales Commission Plan. Salley contended there were triable issues of fact on whether the contract provided that involuntarily terminated employees would receive commissions on unpaid invoices.

The trial court granted summary judgment and entered judgment for defendants. Salley timely appealed. On appeal, he asserts the trial court erred only as to the causes of action against Outfront (not the individual defendants) for meal and rest period violations, unpaid commissions, waiting time penalties, and unfair competition.

## DISCUSSION

### I. Legal Standard

Summary judgment should be granted " 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 (*Conroy*).) On summary judgment or adjudication, a defendant meets its burden on a cause of action by showing that the plaintiff cannot establish "one or more elements of the cause of action . . . or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) Once the defendant does so, the burden shifts to the plaintiff to show a triable issue of at least one material fact. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)

On appeal, we review an order granting summary judgment de novo. (*Conroy, supra,* 45 Cal.4th at p. 1249.) In doing so, we consider all evidence in the record except that which the court properly excluded pursuant to an evidentiary objection. (*Ibid.*) We " 'liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Id.* at pp. 1249–1250.)

### II. Meal and Rest Period Claims

The Labor Code's meal and rest break provisions do not apply to outside salespersons. (Lab. Code, § 1171; *Espinoza v.*

6

*Warehouse Demo Services, Inc.* (2022) 86 Cal.App.5th 1184, 1191 (*Espinoza*).) "The main reason for this exemption is because outside salespersons generally control their own hours and are paid on a commission basis." (*Espinoza*, at p. 1191.) The employer bears the burden of proving this exemption as an affirmative defense. (*Ramirez v. Yosemite Water Co., Inc.* (1999) 20 Cal.4th 785, 794–795 (*Ramirez*).)

The applicable Industrial Welfare Commission (IWC) wage order defines "outside salesperson" as "any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." (Wage Order No. 7-2001, as amended, Cal. Code Regs., tit. 8, § 11070, subd. 2(K).) IWC wage orders " 'are to be accorded the same dignity as statutes' " (*Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 66) and " 'are construed in accordance with the ordinary principles of statutory interpretation' " (*Vaquero v. Stoneledge Furniture LLC* (2017) 9 Cal.App.5th 98, 107). Courts " 'liberally construe the Labor Code and wage orders to favor the protection of employees' " (*Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829, 839) and "narrowly construe[ ]" the exemptions (*Ramirez, supra,* 20 Cal.4th at p. 794).

Whether the undisputed facts establish Salley was an exempt outside salesperson depends on the interpretation of the phrase "away from the employer's place of business." (Cal. Code Regs., tit. 8, § 11070, subd. 2(K).) That is because Salley concedes he was an exempt outside salesperson until he started working from home in March 2020. During the COVID-19 pandemic, he rarely visited clients in person. For some meetings,

he used video conferencing instead of speaking in person. After March 2020, Salley only went to Outfront's office about once a month.

The undisputed facts thus show that Salley regularly and customarily worked more than half the time away from his employer's place of business—unless that term included his home office. We conclude it does not.

The IWC did not define "away from the employer's place of business." (Cal. Code Regs., tit. 8, § 11070, subd. 2(K).) "When a statute [or regulation] does not define its operative words, 'courts should give to the words . . . their ordinary, everyday meaning.'" (*County of Orange v. Santa Margarita Water Dist.* (1996) 44 Cal.App.4th 189, 192; accord *Ste. Marie v. Riverside County Regional Park & Open-Space Dist.* (2009) 46 Cal.4th 282, 288 [we construe the words in a statute or regulation by their plain, commonsense meaning].) The ordinary, everyday meaning of the term "employer's place of business" does not include every remote employee's home. But we recognize that the workplace paradigm has been changing since the IWC enacted the relevant wage order in 1980. (Wage Order No. 7-80.) Employees are increasingly working at home, especially since the COVID-19 pandemic.

The parties identify only one California case interpreting the term "employer's place of business." *Espinoza* held, "[T]he pertinent inquiry as to whether an employee works away from the employer's place of business is not whether the employer owns or controls the worksite, but the extent to which the employer maintains control or supervision over the employee's hours and working conditions." (*Espinoza, supra,* 86 Cal.App.5th at p. 1187.) Though the employer did not own or lease the

worksite, it required the employee "to clock in and out at every shift" and assigned her to work "within a small, designated area" of a retail store. (*Ibid.*) Finding the exemption did not apply, the court reasoned that its "purpose . . . would not be served here where [the employee's] hours and schedule were carefully monitored and controlled by respondent." (*Ibid.*)

Under this inquiry, the trial court properly determined that Salley's California home was not Outfront's place of business. The undisputed facts establish Outfront did not maintain control or supervision over Salley's hours and working conditions. He did not clock in or out. His supervisors did not oversee his schedule or track where he worked. Outfront continued to expect Salley to work mostly in the field. At times, Salley worked from a residence in Arizona or Utah.

Attempting to dispute these facts, Salley relies on his deposition testimony that Outfront "micromanaged" him while he worked from home. But none of the purported "micromanagement" involved his schedule or working conditions. That testimony instead concerned monitoring his work performance, such as requiring him to report making 20 calls to prospective clients each week. He described this as "accountability" and more "communication" about his work. Salley's testimony does not show Outfront maintained any more control over Salley's hours and working conditions than it did during the time he concedes he was an exempt outside salesperson.

In arguing his home office qualified as his employer's place of business, Salley relies on a federal regulation implementing the Fair Labor Standards Act (FLSA). The FLSA (29 U.S.C. § 201, et seq.) provides minimum wage (*id.*, § 206) and overtime

(*id.*, § 207) protections to employees but, unlike California law, "does not require that employers provide meal or rest periods" (*Mauia v. Petrochem Insulation, Inc.* (9th Cir. 2021) 5 F.4th 1068, 1073 (*Mauia*)).  Like the IWC's wage orders, the FLSA excludes outside salespersons from its protections.  (29 U.S.C. § 213(a)(1).)

Salley relies on the following regulation interpreting the FLSA's outside sales exemption: "An outside sales employee must be customarily and regularly engaged 'away from the employer's place or places of business.'  The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home.  Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls.  Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business, even though the employer is not in any formal sense the owner or tenant of the property."  (29 C.F.R. § 541.502 (2016).)

Salley argues that "California law adopts" this regulation.  It does not.  Absent convincing evidence of the IWC's intent to adopt a federal regulation, we generally decline to rely on a federal regulation in interpreting California law.  (See *Morillion v. Royal Packaging Co.* (2000) 22 Cal.4th 575, 592 (*Morillion*).)  "The IWC has on occasion deliberately incorporated federal law into its wage orders.  However, 'where the IWC intended the FLSA to apply to wage orders, it has specifically so stated.'"  (*Martinez v. Combs* (2010) 49 Cal.4th 35, 67.)

Three provisions of the applicable wage order state that certain subjects track specified sections of the Code of Federal Regulations.  (Cal. Code Regs., tit. 8, § 11070, subds. 1(A)(1)(e),

1(A)(2)(f), & 1(A)(3)(e).) Those provisions do not concern the federal regulation Salley contends we should use to interpret California law. "By choosing not to track the language of the federal exemption and instead adopting its own distinct definition of 'outside salespersons,' the IWC evidently intended to depart from federal law." (*Ramirez, supra,* 20 Cal.4th at p. 797.)

It is true that in deciding whether to rely on a federal regulation to interpret state law, we consider the principle that state labor law may provide more protection than the FLSA. (See *Morillion, supra,* 22 Cal.4th at p. 592.) But that principle does not support Salley's position because he alleges violations of substantive rights (meal and rest periods) the FLSA does not provide. (*Mauia, supra,* 5 F.4th at p. 1073.) Regardless of our interpretation of the phrase "employer's place of business" (Cal. Code Regs., tit. 8, § 11070, subd. 2(K)), California law provides greater protection with respect to meal and rest periods because the FLSA provides no protection at all. Therefore, in this case, deviating from the federal regulation under which the "fixed site" of Salley's home was his "employer's place of business" (29 C.F.R. § 541.502 (2016)) does not result in providing less protection than federal law.

Salley cites only one case applying this regulation to interpret California's outside sales exemption: *Urso v. Wells Fargo Bank, N.A.* (N.D. Cal., Mar. 10, 2011, No. C 06-1770 MHP) 2011 WL 13334280 (*Urso*). As an unpublished federal decision, *Urso* can be no more than persuasive authority. (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 940.) In any event, we do not find *Urso* persuasive. *Urso* applied the principle that "California's outside sales exemption was designed to provide more robust protections for employees than the federal exemption." (*Urso, supra,* 2011 WL 13334280 at p. *8.) That

11

principle was relevant because the employee challenged the exemption only with respect to overtime premium pay (*id.* at pp. *1, 3), a right employees have under both the Labor Code and the FSLA. But as we have explained, in this case, deviating from the federal regulation (29 C.F.R. § 541.502 (2016)) does not result in providing less protection than federal law.

Based on the undisputed facts, Salley was an exempt outside salesperson. The trial court did not err in granting summary adjudication of Salley's claims for meal and rest break violations.

## III. Commissions

The second main issue is whether Outfront established that Salley cannot prevail on his cause of action for unpaid commissions. An employee's contract determines his or her right to commissions. (*Nein v. HostPro, Inc.* (2009) 174 Cal.App.4th 833, 853 (*Nein*).) Interpreting a contract "is a judicial function" where the court " 'give[s] effect to the mutual intention of the parties as it existed' at the time the contract was executed." (*Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 432 (*Brown*).) "Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms." (*Ibid.*) Courts "strive to interpret the parties' agreement to give effect to all of a contract's terms, and to avoid interpretations that render any portion superfluous, void or inexplicable." (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1507.) In interpreting a contract, courts first consider evidence of the parties' intent to determine if the contract is ambiguous, meaning "reasonably susceptible" to an interpretation. (*Brown, supra,* at pp. 432–433.) If so, " ' "the extrinsic evidence is then admitted to aid in" ' " interpretation. (*Id.* at p. 433.)

12

The parties do not dispute the contract's terms or any of the potentially relevant extrinsic evidence. On summary judgment, we therefore construe the contract as a matter of law, " 'even when conflicting inferences may be drawn from the undisputed extrinsic evidence [citations] or that extrinsic evidence renders the contract terms susceptible to more than one reasonable interpretation.' " (*Brown, supra,* 34 Cal.App.5th at p. 433.)

The following paragraph of the parties' commission plan governs payments to former employees: "**If a Participant Leaves the Company** [¶] 16. If a participant should leave the Company, only Net Sales from advertisements that have been posted, delivered, and paid by the Advertiser on or before the participant's last day of employment shall be considered when calculating the participant's commission payment, provided that such payment is earned (as set forth in Paragraph 1 herein). It is acknowledged that the servicing of accounts and ensuring that an advertisement actually is posted, as well as ensuring that billings are collected, are critical and essential duties and cannot be performed upon separation from the Company. It also is acknowledged that in no event will the Company pay, or will a participant be entitled to receive, any commissions on sales for advertisements which were not posted and billed prior to the date of separation from the Company, since in that event no commission would have been earned."

The paragraph's first sentence states three requirements for commissions: "on or before the [employee's] last day," the ads must be "[1] posted, [2] delivered, and [3] paid" for. The next two sentences consist of "acknowledgments" that do not alter these three requirements. The second sentence explains why all three requirements must be satisfied before an outside salesperson

13

earns a commission. The third sentence, read in context, provides that if a client pays Outfront for advertisements before they have been posted and billed, the outside salesperson has not earned a commission. All three sentences, read together, provide that when an outside salesperson leaves the company, he or she has not earned commissions unless all three requirements are satisfied.

Salley contends Outfront owes him $85,894 in commissions for ads that were posted and delivered—but not yet paid for—when Outfront terminated him. He argues the "paid" requirement in the first sentence above applies only to employees who "leave" voluntarily. He notes the paragraph's final sentence omits the "paid" requirement and refers to "the date of separation from the Company" instead of using the word "leave." Salley thus contends that interpreting "leave" to include involuntary termination would make that final sentence meaningless.

We are unpersuaded. Nowhere in the contract is there any distinction between an employee's "voluntary" or "involuntary" departure. Moreover, the second sentence of the paragraph emphasizes that the duties required to earn commissions include ensuring clients pay Outfront, which cannot be performed after employment ends.

Similarly, paragraph six of the section titled, "Other Plan Provisions" (bold and underline omitted) states, "It is understood that the servicing of accounts is vital to the retention, development and expansion of the Company's business. Commissions are intended to compensate not only for procuring sales, but also for the servicing of accounts, *including the collection of all amounts due from the sale. Such servicing of accounts requires the performance of all duties necessary to ensure*

14

*that the advertising sold is actually posted and paid for in full by the advertiser."* (Italics added.) Portions of the contract's billing policy further provide, "It is expressly understood that no commission shall be provided on accounts that are unpaid. [¶] All cash receipts must be deposited in the Company lockbox or otherwise received by the Company within [nine billing cycles] in order to be commissionable." When viewed as a whole, the contract provides for commissions only when advertisements are posted, delivered, and paid for before the date of termination.

Salley relies on undisputed extrinsic evidence (two emails) that purportedly supports his position. Billy Corvalan sent an email to Salley on August 20, 2022, stating that Outfront would pay him the contested $85,894. But less than a month later, on September 23, 2022, Corvalan forwarded an email from his superior Len Cusumano stating no further additional commissions would be paid. This undisputed evidence does not change our analysis. That Outfront initially told plaintiff it still owed him commissions on unpaid invoices (before informing him otherwise) does not make the contract ambiguous when read in context and under the circumstances of this case. Nor do the emails persuade us that when the parties entered the 2021 Local Sales Commission Plan, they intended that, upon termination, Salley would be paid commissions on unpaid invoices.

Salley argues Outfront cannot succeed on summary judgment without introducing evidence showing how or why Outfront's senior director of compensation, Len Cusumano, decided Salley was not entitled to further commissions under the contract. Salley provides no authority supporting that proposition. The parties' contract governs his right to commissions. (*Nein, supra,* 174 Cal.App.4th at p. 853.) Salley

15

was not entitled to further commissions under the contract.  The process by which Outfront chose not to pay those commissions is irrelevant.  Regardless, the record includes an email from Cusumano adequately explaining the decision: "Based on Shane's YTD billing *and collections as of his termination date*, there will be no further statements or additional commissions paid." (Italics added.)

There are no disputed material facts to be determined by trial.  All that remains is for the employment contract to be interpreted by the court.  This is true assuming, as Salley contends, different inferences can be made when reviewing the language of the contract and undisputed extrinsic evidence. (*Brown, supra*, 34 Cal.App.5th at p. 433.)  We hold that, as a matter of law, Salley was not entitled to further commissions under his contract with Outfront.  The trial court correctly ruled Salley cannot succeed on his cause of action for unpaid commissions.

## IV. Derivative Causes of Action

There are no triable issues of material fact on Salley's causes of action for waiting time penalties and unfair competition.  Salley acknowledges these two causes of action cannot stand without the underlying claims for meal and rest period violations or for unpaid commissions.  The undisputed facts therefore establish that Salley cannot prevail on his causes of action for waiting time penalties and unfair competition.

## DISPOSITION

The judgment is affirmed.  Outfront Media, LLC shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


TAMZARIAN, J.


We concur:


COLLINS, ACTING P. J.


BENDIX, J.*

---

\* Justice of the Court of Appeal, Second Appellate District, Division One, assigned to Division Four, by the Chief Justice pursuant to article VI, section 6 of the California Constitution.